**In re Ruth HERNANDEZ, Debtor.**

**Bankruptcy No. 92 B 28177.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Dec. 3, 1993.

Order Denying Reconsideration Dec. 29, 1993.

David A. Mucklow, Chicago, IL, for debtor.

John A. Cox, Jr., Coston, Lande & Sapir, Chicago, IL, for creditor Volkswagen Credit, Inc.

## MEMORANDUM OPINION ON DEBTOR'S OBJECTION TO CLAIM OF VOLKSWAGEN CREDIT, INC.

JACK B. SCHMETTERER, Bankruptcy Judge.

Ruth Hernandez ("Hernandez" or "Debtor") filed for protection under Chapter 13 of the Bankruptcy Code on December 18, 1992. Debtor objected to the secured claim filed by Volkswagen Credit, Inc. ("VCI"). She asserts that VCI's claim is secured only up to the value of the collateral, pursuant to Section 506(a) of the Bankruptcy Code, and unsecured for the balance of that claim. Accordingly, Debtor's Chapter 13 Plan provides separately for the secured and unsecured portions of that debt. VCI filed a claim as secured. The issue presented is whether a Chapter 13 debtor is prohibited from bifurcating the claim of a creditor whose claim is secured by the debtor's vehicle into a secured portion amounting to fair market value of the vehicle, and an unsecured portion amounting to the balance of the claim, and thereby reducing the amount of the lien against the security. As the question is colloquially posed, can a Chapter 13 debtor "strip down" a claim secured by personal property?

For reasons discussed, a debtor in a Chapter 13 case can modify a claim secured by personalty so as to bifurcate the undersecured portion, but cannot strip down the lien so as to eliminate it from the collateral after the bankruptcy proceeding has ended.

### UNDISPUTED FACTS

The material facts are undisputed. VCI provided financing in the amount of $13,310.07 for Debtor's purchase of an automo-

bile. VCI filed a proof of claim in Debtor's bankruptcy for the balance due of $9,422.20. Debtor objected to the amount of VCI's secured claim, asserting under 11 U.S.C. § 506(a) that this secured claim should be limited to the market value of the auto securing the debt.

Debtor initially argued, according to N.A.D.A. used car statistical data compiled for this region, that the collateral had an average loan value of $4,475.00 and an average retail value of $6,300.00 for an approximate fair market value of $5,387.50. However, the parties have since stipulated that the fair value of the auto securing VCI's claim of $9,422.20 is $5,924.50.

Debtor's confirmed Chapter 13 Plan provides for 100% payment to secured creditors and 10% payment to unsecured creditors. That Plan requires payments of $200.00 to the Chapter 13 Trustee each month for 60 months. It includes a provision that the holder of "each allowed secured claim" shall "retain the lien securing such claim ...". (That language effectively tracks 11 U.S.C. § 1325(a)(5)(B)(i).) There is no express provision for reduction of the amount of lien on the vehicle.

### JURISDICTION

This matter is before the Court pursuant to 28 U.S.C. § 157, and is referred under Local District Court Rule 2.33. The Court has subject matter jurisdiction under 28 U.S.C. § 1334, and this is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B).

### DISCUSSION

VCI relies upon the Supreme Court's recent decisions in *Nobelman v. American Sav. Bank*, —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), and *Dewsnup v. Timm*, —— U.S. ——, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). It argues that Debtor may not bifurcate the secured and unsecured portions of the debt and treat each differently under the Chapter 13 Plan. Debtor asserts that no provision of the Code prohibits her from bifurcating or "stripping down" VCI's lien against her car. She argues that *Nobelman* does not prohibit lien stripping of vehicles in Chapter 13 proceedings. She reasons that

Section 1322(b)(2) of Title 11 U.S.C. prohibits modifying only those liens secured by a debtor's principal residence. Under that reasoning, liens not secured by a debtor's principal residence are modifiable and secured only to the extent of collateral market value in Chapter 13 proceedings, due to the limited application of § 1322(b)(2). Therefore, § 506 of Title 11 U.S.C. is said to control:

### Determination of Secured Status

(a) *An allowed claim of a creditor secured by a lien* on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, *is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property*, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim.

. . . . .

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—
(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title, or
(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C. § 506(a) and (d).

VCI asserts three reasons why Debtor should not be allowed to strip-down the lien outstanding on her vehicle. First, it uses the reasoning of *Dewsnup* in support of its position that a debtor cannot use § 506 of the Bankruptcy Code to strip down a lien otherwise allowed under § 502. Second, it argues that the policy underlying the Supreme Court's decisions in *Dewsnup* and *Nobleman* is to respect the lien rights the creditor and debtor bargained for in bankruptcy. VCI argues that allowing Debtor to strip down the lien against her car would result in a windfall to her rather than the fresh start intended by Congress when the Bankruptcy Code was enacted. It cites authorities following *Dewsnup* that do not allow a debtor to

strip down a lien on personal property in Chapter 7, and suggests by analogy that a debtor should not be allowed to strip down such a lien in a Chapter 13 proceeding.

Lastly, VCI asserts that, while § 1322(b)(2) does allow a Chapter 13 debtor to modify the rights of a holder of a secured claim, the language therein can be read consistently with *Dewsnup* and *Nobelman* to allow modification of payment terms without allowing stripdown of an undersecured portion of the claim.

■ As shown below, some of VCI's arguments have merit, and accordingly Debtor is not allowed to strip down VCI's lien under § 506(d) so as to reduce lien rights of the secured creditor. However, Debtor is allowed to bifurcate VCI's *claim* in bankruptcy pursuant to § 506(a), so as to pay 100% of only the collateral value as part of the Chapter 13 Plan, and to that extent Debtor's objection to the claim will be sustained. But, after the Chapter 13 Plan is completed, VCI will retain its full security interest in the automobile, even though Debtor's personal debt will be discharged by Plan completion. Thus, the terms of payment on the car will be modified and the *claim* in bankruptcy bifurcated, but the lien will fully pass through the bankruptcy process for debtor to deal with afterward if she then wishes to keep the car.

In *Dewsnup* and *Nobelman,* the Supreme Court considered whether a debtor may use the Bankruptcy Code to "strip down" a lien. Prior to *Dewsnup,* the lower courts had often approved a Chapter 13 debtor's use of § 506(a) and § 1322(b)(2) to bifurcate a lien to secured and unsecured portions, and to strip down an unsecured lien to the value of the underlying collateral, except where the collateral was the debtor's residence. William E. Callahan, Jr., *Dewsnup v. Timm and Nobelman v. American Savings Bank: The Strip Down of Liens in Chapter 12 and Chapter 13 Bankruptcies,* 50 Wash. & Lee Law Rev. 405, 425 (Winter 1993).

■ In *Dewsnup,* the Supreme Court held that § 506(d) does not permit a Chapter 7 debtor to strip down an undersecured claim to the market value of the collateral, notwith-standing language in § 506(a) which bifurcates a secured creditor's claim into secured and unsecured portions. *Dewsnup* reasoned that the language of § 506 regarding secured claims did not overrule the longstanding principle that a lien on real property survives bankruptcy proceedings. —— U.S. at ——, 112 S.Ct. at 778. In *Dewsnup* the Court held that a creditor's lien stays with real property until foreclosure, as bargained for by the mortgagor and mortgagee. *Id.* Following reasoning in *Dewsnup,* it has been held that a lien on any property can only be completely voided under § 506(d) if the claim on which the lien is based is not an allowed claim under § 502. *In re Windham,* 136 B.R. 878, 882 (Bankr.M.D.Fla.1992). In the present case, it is not contended that VCI's claim is not allowed at all under § 502. Thus the lien here cannot be viewed as eliminated under § 506(d).

Following *Dewsnup,* it remained undecided by the Supreme Court whether a Chapter 13 debtor is allowed to strip a lien and limit a secured claim to market value of the collateral. Section 1322(b)(2) provides that a Chapter 13 Plan may:

> modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

11 U.S.C. § 1322.

A line of lower court cases had held that a Chapter 13 debtor's use of 11 U.S.C. § 506(d) to strip down a mortgagee's lien secured only by the debtor's residence did not violate § 1322(b)(2). *In re Hirsch,* 155 B.R. 688 (Bankr.E.D.Pa.1993), *citing Sapos v. Provident Institution of Savings in Town of Boston,* 967 F.2d 918, 926 (3d Cir.1992); *Wilson v. Commonwealth Mortgage Co.,* 895 F.2d 123, 126–28 (3d Cir.1990). The reasoning was summarized as follows:

> The debtor first uses section 506(a) to bifurcate the undersecured lien into a secured claim equal to the value of the collateral and an unsecured claim for the portion of the lien in excess of the value of the collateral. The debtor continues to make regular monthly payments on the secured

portion of the debt according to his original loan agreement.

Under section 1322(b)(2) the debtor then relegates the unsecured portion of the debt into the class that contains all other unsecured creditors ... After the three-to-five year period of the plan, the court grants the debtor a discharge for all remaining unsecured debt.

William E. Callahan, *Dewsnup v. Timm and Nobelman v. American Savings Bank: the Strip Down of Liens in Chapter 12 and Chapter 13 Bankruptcies,* 50 Wash. & Lee L.Rev. 405, 407–09 (Winter 1993) (footnotes omitted). Under such reasoning, the debtor was not seen to violate the § 1322(b)(2) prohibition against modifying claims secured by the debtor's primary residence, because the creditor's claim is automatically bifurcated into secured and unsecured portions by operation of § 506(a).

■ In *Nobelman,* the Supreme Court addressed the application of §§ 506 and 1322 to Chapter 13 proceedings. It ruled that the plain language of § 1322(b)(2) does not allow a debtor to use § 506(a) to strip down the lien of a mortgagee to the value of the mortgaged premises where the mortgagee's claim is secured only by a lien on the debtor's residence. —— U.S. at ——, 113 S.Ct. at 2110–11. The *Nobelman* court did not apply the reasoning that the *Dewsnup* decision had used in a Chapter 7 case, and did not hold that a Chapter 13 debtor may never use § 506(d) to strip down any undersecured claim. The Court read the language of § 1322(b)(2) as an express protection of mortgagees from the modification of claims otherwise allowed by that provision.

Still unresolved after *Nobelman* and *Dewsnup* is the issue now before this Court, whether a Chapter 13 debtor may either bifurcate a creditor's claim pursuant to § 506(a), or strip down a lien secured by property other than the debtor's primary residence pursuant to § 506(d). Authorities before *Nobelman* allowed such modification and lien stripping. *Sapos,* 967 F.2d at 926; *Wilson,* 895 F.2d at 126–28; *In re Groff,* 131 B.R. 703 (Bankr.E.D.Wis.1991). These authorities reasoned that § 1322(b)(2) is narrowly tailored and prohibits modification of a

secured creditor's claim only when a debtor is attempting to strip down a mortgage held by a residential mortgagee.

■ The terms "lien stripping" and "bifurcation" are often used interchangeably when parties address modification of a secured creditor's rights. However, the conceptual process and effect of each are quite different. The language of § 506(a) bifurcates a creditor's claim into secured and unsecured portions. The effect of bifurcation is that creditor's claim is separated and each portion will usually receive different treatment under the plan of a Chapter 13 debtor. As discussed above, when a debtor intends to "lien strip" pursuant to § 1322(b)(2), the first step in the process is bifurcation of the claim. The debtor would then use § 506(d) to strip down any unsecured portion of the lien. The effect of the attempted lien stripping would be that the amount of the creditor's remaining lien is limited to the market value of the collateral. Thus, if the plan were completed, the debtor would leave bankruptcy discharged of personal debt and with the collateral free of the lien.

■ *Dewsnup* expressly held that a debtor is not allowed to use § 506(d) to strip down the undersecured portion of a lien. The opinion reasoned that, in the absence of clear legislative history or expressed change in statutory wording, a debtor cannot, through application of § 506(d), alter those lien rights that the parties bargained for pre-bankruptcy when entering into the lien or mortgage. *Dewsnup,* —— U.S. at ——, 112 S.Ct. at 778–79. The Court made clear that its holding was narrow. *Id.* at —— n. 3, 112 S.Ct. at 778 n. 3. However, its rationale applies to attempts to strip down any lien in a proceeding under any chapter of the Bankruptcy Code, including Chapter 13. *See, e.g., In re Gammon,* 155 B.R. 15 (W.D.Okla.1993) (holding debtor may not pay off secured claim allowed in Chapter 13 proceeding, then convert to a Chapter 7 proceeding to avoid the *Dewsnup* prohibition against lienstripping); *but see In re Murry Hudson,* 147 B.R. 960, 962–64 (N.D.Cal.1992) (creditor required to release lien on automobile after secured portion of creditor's bifurcated claim is paid).

Does statutory wording or any legislative history provide a basis for finding that Congress intended to override the recognized principle that secured liens survive bankruptcy? Certainly, the wording of § 1325(a)(5)(B) contradicts that view. Indeed, the plain language of that provision provides that a Chapter 13 Plan may only be confirmed as to each allowed secured claim if the holder of that claim retains the "lien" *and* payments made under the Plan equal the allowed amount of the "secured claim". The statute does not use the words "lien" and "claim" to mean the same thing. Nothing in that provision says that the secured creditor must retain only part of the lien measurable by collateral value. But the statute requires *payment* under the Plan only in the amount of the secured *claims*. If the Plan does not provide full protection for the lien, the debtor must surrender the collateral in order to obtain confirmation:

§ 1325. Confirmation of plan.

(a) Except as provided in subsection (b), the court shall confirm a plan if—

. . . . .

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder; . . .

11 U.S.C. § 1325(a)(5)(B)(C).

Nor does the legislative history demonstrate unambiguous intent by Congress to override the rule that liens survive bankruptcy. It is true that at least one Congressman's views did display such intent:

Of course, the secured creditors' lien only secures the value of the collateral and to the extent property is distributed of a present value equal to the allowed amount of the creditor's secured claim the credi-

tor's lien will have been satisfied in full. Thus the lien created under section 1325(a)(5)(B)(i) is effective only to secure deferred payments to the extent of the amount of the allowed secured claim.

124 Cong.Rec. H11107 (daily ed. Sept. 28, 1978) (statement of Rep. Edwards setting forth results of conference committee), *reprinted in* Appendix 3 Collier on Bankruptcy IX–122 (15th ed. 1993).

However, such a sparse legislative record of one Congressman's views does not meet either the *Dewsnup* requirements or the views of our Circuit on the uses and limitations of legislative history. Given the long-standing and firm Supreme Court precedent holding that liens pass through the bankruptcy process, *Dewsnup* reasoning would require a clear legislative change. Section 1325(a)(5)(B) and (C) make clear that "the lien" is to be retained by a secured creditor in Chapter 13, and that the allowed amount of the claim is to be paid in full or the property surrendered. That is a long way from a legislative change in the old rule of law preserving liens; indeed, the statutory words of § 1325 support that rule. Congressman Edwards' statement in the Congressional Record is not compatible with the statutory change necessary to find the *Dewsnup* reasoning inapplicable.

█ Legislative history is sometimes useful, but often viewed with great skepticism by the Supreme Court and in our Circuit. Such history is given little weight when plain statutory wording is susceptible of being read literally to mean what it says and there is no ambiguity. *Barnhill v. Johnson,* —— U.S. ——, ——, 112 S.Ct. 1386, 1391, 118 L.Ed.2d 39 (1992); *Board of Education v. Mergens,* 496 U.S. 226, 237, 110 S.Ct. 2356, 2365, 110 L.Ed.2d 191 (1990); *Perera v. Siegel Trading Co., Inc.,* 951 F.2d 780, 784 (7th Cir.1992); *Matter of Russell Sinclair,* 870 F.2d 1340, 1341–44 (7th Cir.1989). *See also Conroy v. Aniskoff,* —— U.S. ——, —— – ——, 113 S.Ct. 1562, 1567–72, 123 L.Ed.2d 229 (1993) (J. Scalia concurring opinion).

In the face of the plain wording of § 1325(a)(5)(B) and (C), it can hardly be said that Congress intended § 506(a) to trump

§ 1325(a)(5)(B) and (C) in Chapter 13, and intended that the § 506(a) provision applicable to all chapters would supersede in Chapter 13 the § 1325 provision limited to that Chapter. To say the contrary would be to read words at the head of § 506(a) that are not there, something like "Notwithstanding § 1325(a)(5)(B)(i) ...", or would read words into § 1325(a)(5)(B)(i) such as "provided, however, that the value of the lien is reduced to the value of the secured claims under § 506(a)". Those words are not in the statute, and cannot be read into it.

■ Accordingly, this Court finds that a Chapter 13 debtor is not allowed to "strip down" a *lien*, even one secured by personal property.

However, no portions of the Bankruptcy Code or the *Dewsnup* or *Nobleman* decisions preclude the creditor's *claim* from being bifurcated into secured and unsecured portions, pursuant to Section 506(a), and receiving separate treatment in debtor's Chapter 13 plan. Section 1322(b)(2) addresses the modification of secured and unsecured claims in a Chapter 13 plan. This provision permits a debtor to modify the payment rights of a holder of a secured claim when such claim is secured by property other than the debtor's primary residence.

■ In discussing the rights of a secured creditor in a Chapter 13 case, one authority reasons thus:

> 11 U.S.C. § 1322(b)(2) permits the Chapter 13 plan to modify the rights of the holders of secured claims other than a claim secured only by a security interest in real property that is the debtor's principal residence. This very significant power allows debtors to change contract terms by altering interest rates and monthly payments, by changing the length of the repayment period, by changing the total amount to be repaid, and by altering other terms such as net worth or life insurance requirements. The debtor can ignore the prepetition contract but must pay at least the present value of the collateral securing the claim while allowing the creditor to retain its lien.

1 Chapter 13 Bankruptcy, Keith M. Lundin, § 4.24 at 4–20 (1991). *See also In re Windham*, 136 B.R. 878, 882 (Bankr.M.D.Fla.1992) (Post–*Dewsnup* case holding in a Chapter 7 case that lien stripping is impermissible). Accordingly, creditors with liens secured by property other than a debtor's primary residence may have their claims bifurcated and modified under the debtor's Chapter 13 plan, while the liens survive the bankruptcy.

VCI has argued that the concern that drove the Supreme Court to reach its decisions in *Dewsnup* and *Nobelman* was the preservation of all rights bargained for between a debtor and its creditors. However, the reasoning of these cases only requires recognition that a lien on property passes through a bankruptcy unaffected. VCI's lien is found here to remain on the automobile, unaffected by bifurcation and modification of its claim.

### CONCLUSION

For the forgoing reasons, Debtor's objection to VCI's claim is sustained, and payment on the secured claim in this Chapter 13 proceeding is limited to the fair market value of collateral securing the debt. The parties have stipulated that such amount is $5,924.50. That entire amount will be paid through the Plan. The balance of the creditor's claim is treated as unsecured in this Chapter 13 proceeding. Notwithstanding the forgoing, VCI's lien remains on the automobile, and will fully survive completion of the Chapter 13 Plan. The debtor will be discharged of personal liability if the Plan completes. However, the lien will remain on the vehicle to secure a debt that will then be without personal recourse.

Of course, the reality of economic value will determine what actually happens if the Plan completes. If the stipulated present value of the car is precisely accurate, it will become a pile of valueless junk on the day of the last Chapter 13 payment, collapsing in a flash like the proverbial "Deacon's One–Hoss Shay". More likely, if the Plan completes, the final day of the auto will come some time later. In that event, it will have residual value after the Plan completes, and the parties would then each be motivated to agree to

something of mutual benefit should debtor want to keep the old auto.

In the meantime, debtor's payment obligations are modified to a manageable level and she can continue to use the auto during the five-year period of the Plan. Thus, her fresh economic start is aided in a practical sense, even though the lien fully survives.

### ORDER DENYING DEBTOR'S "MOTION TO RECONSIDER" OPINION AND ORDER OF DECEMBER 3, 1993

Debtor has moved the Court to "reconsider its opinion and order of December 3, 1993, which denied debtor's effort to "strip down" the lien of Volkswagen Credit Inc. ("VCI"). Essentially, she tries to show that this Court erred in analysis of applicable authority and in application of Supreme Court authority in light of 11 U.S.C. § 1325(a)(5)(B)(i).

 The basic argument now is that this Court misapplied the reasoning in *Dewsnup v. Timm*, —— U.S. ——, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), in light of 11 U.S.C. § 1327, which provides:

(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

Debtor argues that, under § 1327(c), Plan confirmation vested the automobile in issue in the debtor "free and clear of any claim or interest of any creditor provided for by the plan". But that provision starts out with a proviso: "Except as otherwise provided in the plan or in the order confirming the plan...." This Debtor's confirmed Plan did provide otherwise.

The confirmed Plan tracked the language of 11 U.S.C. § 1325 in providing:

4. With respect to each allowed secured claim provided by the Plan, the Petitioner proposes:

A. The holder of such claim has accepted the Plan or;

B. The holder of such claim shall retain the lien securing such claim and the value, as of the effective date of the Plan, of property to be distributed under the Plan on account of such claim is not less than the allowed amount of such claim; or;

C. The Debtor(s) surrender the property securing the claim to such holder thereby rendering the claim unsecured.

(Plan ¶ 4.)

Thus, the terms of the confirmed Plan make § 1327(c) ineffective to allow debtor to strip down the VCI lien.

An interesting question would arise if a debtor offered a Plan not in conformity with § 1325(a)(5)(B)(i), but proposed through the Plan to strip down the lien. If the creditor or court did not notice that violation of § 1325 and the Plan was confirmed, would § 1325(c) then make the Plan "strip down" binding on the creditor? The results under that scenario are unclear. One commentator has warned of this possibility, and urged diligence on the part of creditors to be alert to it. 15 *Collier on Bankruptcy*, 15th Ed. § 1327.01[3] at p. 1327–8 to 10.

However, here the Plan was confirmed, and did not contradict § 1325. Resolution of other facts must await another case.

Accordingly, the motion of Hernandez is denied.