**In re Brenda WILSON.**

**Bankruptcy No. 9303518JEE.**

United States Bankruptcy Court,
S.D. Mississippi,
Jackson Division.

Nov. 4, 1994.

Terre M. Vardaman, Jackson, MS, for Harold J. Barkley, Jr., Trustee.

John S. Simpson, Jackson, MS, for Volkswagen Credit.

S. David Pickett, Jackson, MS, for debtor.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

EDWARD ELLINGTON, Chief Judge.

This matter came before the Court on the *Debtor's Objection to Secured Claim(s) and Petition Other Relief* (sic) and *Volkswagen Credit, Inc.'s Response to Debtor's Objection to Secured Claim(s) and Other Relief.* After considering the pleadings, the stipulation and the briefs filed by each party, the Court finds that the Debtor's objection is well taken and should be sustained.

### FINDINGS OF FACT

On August 5, 1994, the parties submitted a *Stipulation.* The following is a synopsis of the stipulation:

On November 27, 1989, the Debtor executed a retail installment contract in favor of Lee Schilly Volkswagen Mazda, Inc. (Lee Schilly). In this installment contract, Lee Schilly agreed to sell to the Debtor a 1989 VW Fox automobile on an installment basis.

Lee Schilly assigned the installment contract to Volkswagen Credit, Inc. (VCI), and VCI then provided purchase money financing to the Debtor for the transaction. The total amount financed pursuant to the contract was $12,444.95. VCI holds a valid, duly perfected, purchase money security interest in the Debtor's 1989 VW Fox automobile (the automobile). VCI is the first lien holder on the automobile.

The Debtor filed a petition for relief under Chapter 13 of the United States Bankruptcy Code on October 27, 1993. The Debtor filed her proposed Chapter 13 plan on November 12, 1993. The proposed plan lists VCI as a secured claimant and provides that VCI shall retain its lien pursuant to 11 U.S.C. § 1325(a)(5)(B)(i).[1] In her plan, the Debtor proposes a value of $3,250 for VCI's collateral. VCI agrees that the value of the vehicle on October 27, 1993, was $3,250. The Debtor proposes to pay VCI the $3,250 plus interest over a period of thirty-six (36) months for a total payment of $3,886.03. The net payoff on the contract as of October 27, 1993, was $5,684.46, excluding any attorneys' fees, costs of collection or other charges which may be allowed. The Debtor's plan does not propose any payment to her unsecured creditors.

On January 3, 1994, the Debtor filed her *Objection to Secured Claim(s) and Petition Other Relief (sic).* The Debtor's objection requests the Court to "set the value (of VCI's collateral) for the purpose of plan confirmation" at $3,250. The objection further states that "upon payment of value plus interest, the lien be canceled and any title documents be delivered to Debtor(s)." *Objection to Secured Claim(s),* p. 1, (January 3, 1994).

On January 28, 1994, VCI filed a timely response to the Debtor's objection to its claim. VCI states in its response that it objects to its lien being canceled, voided or rendered unenforceable upon the payment of value ($3,250). VCI alleges that the Debtor must pay the entire balance owed VCI on the contract in order to have its lien voided. However, both parties agree that regardless of the outcome of this matter, VCI's lien may

not be canceled unless the Debtor makes all payments required by her Chapter 13 plan and receives a discharge from her Chapter 13 bankruptcy.

The parties stipulated that the "sole issue presented for determination by this Court in this proceeding is whether, upon Debtor's discharge from her Chapter 13 Bankruptcy, should that occur, VCI's lien shall be canceled and VCI required to deliver any title documents to Debtor." *Stipulation,* p. 3, ¶ 12 (April 11, 1994).

The parties additionally stipulated that the Court had jurisdiction to consider this matter and that the Court take judicial notice of the official Court file.

### CONCLUSIONS OF LAW

#### I.

This Court has jurisdiction of the subject matter and of the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (B) and (L).

#### II.

Section 1322 sets forth the elements which must be contained in a debtor's plan and the elements which may be contained in a debtor's plan. Section 1322(b) allows a debtor to modify the rights of both secured and unsecured creditors with one exception. Section 1322(b) states:

**1322. Contents of plan.**

(b) (T)he plan may—

. . . .

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

VCI does not dispute that the Debtor may utilize § 1322(b) to modify its claim during the pendency of the plan. *Volkswagen Cred-*

---

1. Hereinafter, all code sections refer to the Bankruptcy Code found at Title 11 of the United States Code unless specifically noted otherwise.

*it's Memorandum Brief,* p. 10 (June 14, 1994). However, VCI argues that the modification is limited and that the Debtor cannot strip down the unsecured portion of its lien.

■ In order to reach the ultimate issue in this matter of lien stripping or cramming down [2] of a claim in a Chapter 13, the Court must first address the interplay between § 1325 and § 506.

Section 1325 sets forth the requirements that a debtor must meet in order to obtain confirmation of his or her Chapter 13 plan. In the case at bar, it is not necessary to discuss all of the provisions in § 1325 since subsection (a)(5) is the provision in controversy. Section 1325(a)(5) pertains to the treatment of holders of secured claims. Section 1325(a)(5) provides in pertinent part:

**11 U.S.C. § 1325. Confirmation of plan**

(a) (T)he court shall confirm a plan if—

. . . .

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder. . . .

### A.

### § 1325(a)(5)(B)(ii)

In order to obtain confirmation of a plan, a debtor has three options available him or her in regard to the treatment of a secured claim under § 1325(a)(5): (1) the plan may be accepted by the holder of the secured claim

[subsection (a)(5)(A) ]; (2) the debtor may cram down the secured claim to the value of the collateral [subsection (a)(5)(B) ]; or (3) the debtor may surrender the collateral [subsection (a)(5)(C) ]. In the case at bar, VCI has not accepted the Debtor's proposed plan, therefore, the Debtor has chosen to retain the automobile and cram down VCI's secured claim to the value of the automobile pursuant to § 1325(a)(5)(B).

■ Since the provisions of § 1325(a)(5)(A) have not been met and the Debtor has chosen not to surrender the collateral pursuant to § 1325(a)(5)(C), then the Debtor's plan must meet the requirements of both § 1325(a)(5)(B)(i) and § 1325(a)(5)(B)(ii). *Rake v. Wade,* —— U.S. ——, ——, 113 S.Ct. 2187, 2190–91, 124 L.Ed.2d 424 (1993). Consequently in order to have her plan confirmed, the Debtor's plan must provide that VCI shall retain its lien on the automobile and that as of the effective date of the plan, the value of the property to be distributed under the plan on account of VCI's claim is not less than the allowed amount of such claim.

The United States Supreme Court has held that § 506 allows a debtor to bifurcate a creditor's claim into a secured claim to the extent of the value of the creditor's collateral and into an unsecured claim for the remaining balance of the creditor's claim. *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 239, 109 S.Ct. 1026, 1029, 103 L.Ed.2d 290 (1989). Section 506 provides in pertinent part:

**11 U.S.C. § 506. Determination of secured status**

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, . . . and is an unsecured claim to

---

**2.** The terms "cram down" or "lien strip" are colloquialisms used to describe the process whereby a secured creditor's lien is limited to the market value of its collateral. As discussed later in this opinion, the term "bifurcation" is used in connection with § 506(a). Section 506(a) bifurcates a creditor's claim into secured and unsecured portions. When a debtor crams down a

creditor's claim pursuant to § 1322(b)(2) and § 1325(a)(5)(B), the first step is to bifurcate the claim under § 506(a). The debtor then uses § 506(d) to cram down the creditor's lien to the market value of the collateral with the balance of its claim being unsecured. The terms cram down and lien strip will be used interchangeably.

the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. . . .

. . . .

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void. . . .

■ For the purposes of § 1325(a)(5), the allowed secured claim as defined by § 506(a) is the value of the collateral on which the creditor has a lien. Since VCI stipulated that it does not have a dispute with the value placed on the automobile by the Debtor, VCI holds an allowed secured claim for $3,250 pursuant to § 506(a).

■ As previously recited, § 1325(a)(5)(B)(ii) provides "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim." The "allowed amount" of VCI's secured claim is $3,250 and "the value" of the automobile is $3,250; therefore, the value of the automobile and the allowed secured claim are equal, and the Debtor has met the requirements of § 1325(a)(5)(B)(ii).

■ The difference between the claim of VCI ($5,684.46) and the value of the automobile ($3,250) is treated as an allowed unsecured claim pursuant to § 506(a). Since the Debtor's plan proposes to pay her unsecured creditors zero dollars, VCI will not be paid on its unsecured claim. This treatment of VCI's claim is in accordance with the Fifth Circuit's opinion of *Grubbs v. Houston First American Savings Assoc.*, 730 F.2d 236 (5th Cir.1984). In *Grubbs*, the Fifth Circuit states that the newly enacted Bankruptcy Code:

(R)equires the court to value the secured creditor's interest. To the extent of the value of the security interest, he is treated as having a secured claim. . . . To the extent that his claim against the debtor exceeds the value of his collateral, he is

treated as having an unsecured claim, and he will receive payment along with all other general unsecured creditors.

*Grubbs*, 730 F.2d at 239, n. 3.

Since VCI's allowed secured claim has been established through § 1325(a)(5)(B)(ii) and § 506(a), the Court may now address the issue of lien retention contained in § 1325(a)(5)(B)(ii).

**B.**

**§ 1325(a)(5)(B)(i)**

■ Section 1325(a)(5)(B)(i) is the provision where the parties' main dispute lies. VCI argues that its lien on the automobile may not be canceled because the United States Supreme Court has prohibited lien stripping under § 506(d) and due to the fact that § 1325(a)(5)(B)(i) states that the plan must provide "that the holder of such claim retain the lien securing such claim." VCI states that after her discharge (assuming the Debtor completes her plan and is entitled to a discharge), the Debtor will have to pay VCI the unsecured portion of its claim outside of the bankruptcy in order to have the lien canceled. The Debtor [3] argues that she can utilize the provisions of § 506(d) to cram down VCI's lien and that the requirements of § 1325(a)(5)(B)(i) are met by VCI retaining a lien on the automobile to the extent of its allowed secured claim, i.e. the value of the automobile. Once VCI has been paid an amount equal to its allowed secured claim, its lien will have been satisfied in full and she is entitled to have VCI's lien canceled. In addition, the Debtor argues that VCI's interpretation of § 1325(a)(5)(B)(i) would totally eviscerate the intent of Congress for a debtor to obtain a fresh start after completion of a bankruptcy.

In support of its argument, VCI cites the case of *In re Hernandez*, 162 B.R. 160 (Bankr.N.D.Ill.1993). In a nearly identical fact situation to the one before this Court, the court in *Hernandez* held that a creditor's lien passed through the debtor's Chapter 13

---

**3.** It should be noted that the Chapter 13 Trustee, Harold J. Barkley, Jr., by and through his attorney, Terre M. Vardaman, is the party actually arguing this matter on behalf of the Debtor. All references to the position or arguments of the Debtor are actually the arguments briefed by the Trustee on behalf of the Debtor.

unaffected. *Hernandez* was issued on December 3, 1993, and the petition for rehearing was denied on December 29, 1993. During the interim, on December 21, 1993, United States District Court Judge Harry H. MacLaughlin entered an opinion in *In re Lee,* 162 B.R. 217 (D.Minn.1993) [affirming the decision of the Bankruptcy Court], on the same issue before the *Hernandez* court, but with a different result. Judge MacLaughlin first gives a good overview of the case law on lien stripping in Chapter 13, and then beginning on page 222 of his opinion, he gives an excellent analysis of the statutory text, the case law and the general policies behind Chapter 13 to support his conclusion that, with the limited exception found in § 1322(b) as to the debtor's principal residence, lien stripping is available to debtors in Chapter 13.

The court in *Hernandez* based its opinion upon two recent United States Supreme Court cases of *Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) and *Nobelman v. American Savings Bank,* — U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993).

In *Dewsnup,* the Supreme Court addressed the issue of whether a Chapter 7 debtor can strip the lien of a creditor under § 506(d). As stated previously, § 506(d) provides:

**11 U.S.C. § 506. Determination of secured status**

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void....

In *Dewsnup,* the Supreme Court found that the debtor could not strip down the lien of a creditor who was secured by an interest in real property. The Supreme Court declined to give the words "allowed secured claim" the same meaning in § 506(d) as in § 506(a), stating "given the ambiguity in the text, we are not convinced that Congress intended to depart from the pre-Code rule that liens pass through bankruptcy unaffected." *Dewsnup,* 502 U.S. at 417, 112 S.Ct. at 778. In examining the legislative history of the Bankruptcy Code, the Supreme Court failed to find any indication that Congress intended this pre-Code rule to be changed; therefore, the Supreme Court declined to change it to allow a debtor to strip liens in a Chapter 7.

*Dewsnup* can be distinguished from the case at bar on several grounds. First, *Dewsnup* was a case under Chapter 7 of the Bankruptcy Code, and the Supreme Court itself limited the application of its ruling to the factual situation before it:

Hypothetical applications that come to mind and those advanced at oral argument illustrate the difficulty of interpreting the statute in a single opinion that would apply to all possible fact situations. We therefore focus upon the case before us and allow other facts to await their legal resolution on another day.

*Dewsnup,* 502 U.S. at 417, 112 S.Ct. at 778.

Secondly, the Supreme Court stated that it would not allow lien stripping under the facts presented to it in *Dewsnup* because it was not willing "to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history." *Dewsnup,* 502 U.S. at 419, 112 S.Ct. at 779.

The legislative history to § 1325(a)(5)(B)(i) contains a specific discussion of lien stripping:

Of course, the secured creditors' (*sic*) lien only secures the value of the collateral and to the extent property is distributed of a present value equal to the allowed amount of the creditor's secured claim the creditor's lien will have been satisfied in full. Thus the lien created under section 1325(a)(5)(B)(i) is effective only to secure deferred payments to the extent of the amount of the allowed secured claim.

124 Cong.Rec. H 11107 (Sept. 28, 1978) (remarks of Rep. Edwards), *as reported in,* L. King, *Appendix 3 Collier on Bankruptcy,* Part IX at p. 122 (15th Ed.1994). This legislative history is explained in *Collier On Bankruptcy* as follows:

In other words, once the holder of an allowed secured claim has received all payments attributable to that claim under the plan, the lien must be satisfied and the

secured creditor has no further right to special treatment; if, due to claim bifurcation under section 506(a), the same creditor also holds an allowed unsecured claim, that creditor, like other holders of allowed unsecured claims, has no right to a lien securing its right to payment of the unsecured portion of its claim.

5 L. King, *Collier on Bankruptcy* ¶ 1325.06(4)(a) at 1325–41 (15th Ed.1994) (footnotes omitted).

Unlike the situation presented to the Supreme Court in *Dewsnup*, it is clear that Congress intended to allow a Chapter 13 debtor to bifurcate a claim and strip the lien upon payment to the secured creditor of its allowed secured claim. Rather, in the context of a Chapter 13, the purpose of the provision in § 1325(a)(5)(B)(i) requiring that the plan provide for lien retention during the life of the plan is to protect the secured creditor with "an allowed secured claim from loss occasioned by a later failure on the part of the debtor to complete the proposed plan, since absent such a provision, the lien may be eliminated upon confirmation by the vesting of all property of the estate in the debtor." 5 L. King, *Collier on Bankruptcy* ¶ 1325.06(4)(a) at 1325–40 to 1325–41 (15th Ed.1994) (footnote omitted).

"(T)he holding of *Dewsnup* is limited to chapter 7 liquidations only and does not reach reorganizations under chapter 13." *Sapos v. Provident Institution of Savings, et al.,* 967 F.2d 918, 921 (3rd Cir.1992). *See also United Carolina Bank v. Hall,* 993 F.2d 1126 (4th Cir.1993); *In re Bellamy,* 962 F.2d 176 (2nd Cir.1992); *Ford Motor Credit Company v. Pickett (In re Pickett),* 151 B.R. 471, 474 (Bankr.M.D.Tenn.1992); *Schultz v. Hancock Bank (In re Schultz),* 153 B.R. 170 (Bankr.S.D.Miss.1993). Likewise, this Court finds that the prohibition on lien stripping pronounced by the Supreme Court in *Dewsnup* is not applicable to a proceeding under Chapter 13 of the Code.

The court in *Hernandez* also relied upon the case of *Nobelman v. American Savings Bank,* —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) to support its decision that a creditor's lien may not be crammed down by a debtor in a Chapter 13. In *Nobel-*

*man,* the Supreme Court held that § 1322(b)(2) prohibits a debtor from utilizing § 506(a) to bifurcate a claim into secured and unsecured claims if the claim is one secured only by the debtor's principal residence.

Several bankruptcy courts have addressed the affect of the Supreme Court's ruling in *Nobelman* on lien stripping in a Chapter 13. Chief Bankruptcy Judge Frank W. Koger addressed this issue in *In re Cooke,* 169 B.R. 662 (Bankr.W.D.Mo.1994). Judge Koger stated:

> Rather than focus on the language of § 506, the Supreme Court relied on the plain language of § 1322(b)(2) to prohibit lien stripping of home mortgages in Chapter 13. . . .
>
> *Nobelman* did not prohibit all lien stripping in Chapter 13, nor did the Supreme Court refer to *Dewsnup* in *Nobelman.* The plain language of § 1322(b) indicates that a debtor may lien strip a creditor's lien when that lien is in something other than the debtor's principal residence.

*Cooke,* 169 B.R. at 666 (citations omitted).

Likewise, Judge Henry J. Boroff held that "(Section) 506 is a methodology which enables Chapter 13 debtors to strip down liens falling outside of *Nobelman's* carved out exception in § 1322(b)(2)." *McDonough v. Plaistow Cooperative Bank (In re McDonough),* 166 B.R. 9, 13 (Bankr.D.Mass.1994).

■ Judge Boroff considered the following legislative history to § 1325:

> With respect to secured claims provided for by the plan, the holder of the claim must have accepted the plan, or the debtor must either distribute under the plan the value, as of the effective date of the plan, to the holder of the claim, property of a value that is not less than *the allowed amount of the secured claim, as determined under proposed 11 U.S.C. [§] 506(a),* or the debtor must surrender the property securing the claim to the holder of the claim. H.R.Rep. No. 595, 95th Cong., 1st Sess. 430 (1977); U.S.Code Cong. & Admin.News 1978, pp. 5787, 6385 (emphasis supplied).

*McDonough,* 166 B.R. at 13. Judge Boroff found that this legislative history is clear as to the specific intent of Congress to alter "any pre-Code practice allowing liens to pass through bankruptcy unaffected. More importantly, . . . this Court finds in Chapter 13 cases the crucial nexus between the modification of secured claims and § 506(a)'s definition of 'allowed secured claim,' which nexus the *Dewsnup* Court could not find in the Chapter 7 context. *See Dewsnup,* 502 U.S. 417 n. 3, 112 S.Ct. at 778 n. 3." *McDonough,* 166 B.R. at 13. *See also Gibbons v. Opechee Distributors, Inc. (In re Gibbons),* 164 B.R. 717 (Bankr.D.N.H.1993); *In re Lee,* 156 B.R. 628 (Bankr.D.Minn.1993), *aff'd,* 162 B.R. 217 (D.Minn.1993); *Hirsch v. Citicorp Mortgage Corp. (In re Hirsch),* 155 B.R. 688 (Bankr. E.D.Pa.1993); *In re Murry–Hudson,* 147 B.R. 960 (Bankr.N.D.Cal.1992). Consequently, this Court finds that a Chapter 13 debtor may strip down a lien except for a lien secured only by the debtor's principal residence.

### *C.*

### Purpose of Chapter 13

If this Court adopted the arguments of VCI and the reasoning of the court in *In re Hernandez,* 162 B.R. 160 (Bankr.N.D.Ill. 1993) and denied lien stripping in the context before the Court, the Court would not only be ignoring case law and statutory text, but also the intent of Congress in creating Chapter 13.

The legislative history to Chapter 13 is very clear:

The purpose of chapter 13 is to enable an individual, under court supervision and protection, to develop and perform under a plan for the repayment of his debts over an extended period. In some cases, the plan will call for full repayment. In others, it may offer creditors a percentage of their claims in full settlement. . . . This protection (from creditors) relieves the debtor from indirect and direct pressures from creditors, and enables him to support himself and his dependents while repaying his creditors at the same time.

The benefit to the debtor of developing a plan of repayment under chapter 13, rath-

er than opting for liquidation under chapter 7, is that it permits the debtor to protect his assets. In a liquidation case, the debtor must surrender his nonexempt assets for liquidation and sale by the trustee. Under chapter 13, the debtor may retain his property by agreeing to repay his creditors. . . . The benefit to creditors is self-evident: their losses will be significantly less than if their debtors opt for straight bankruptcy.

H.R.Rep. No. 95–595, 118, 95th Cong., 1st Sess. (1977), *as reported in,* L. King, *Appendix 2 Collier on Bankruptcy,* Part II (15th Ed.1994). In addition, the Committee on the Judiciary of the House of Representatives stated:

The premises of the bill with respect to consumer bankruptcy are that use of the bankruptcy law should be a last resort; that if it is used, debtors should attempt repayment under chapter 13, . . . and finally, whether the debtor uses chapter 7, . . . or chapter 13, . . . bankruptcy relief should be effective, and should provide the debtor with a *fresh start.*

H.R.Rep. No. 95–595, 118, 95th Cong., 1st Sess. (1977), *as quoted in,* L. King, *Appendix 2 Collier on Bankruptcy,* Part II (15th Ed.1994).

For all of the above reasons, the Court holds that lien stripping is permissible under the facts of this case.

### *CONCLUSION*

After review of the Code and the relative legislative history, the case law and the general policies behind Chapter 13, the Court finds that the Debtor may utilize the provisions of §§ 506(a) and (d), 1322(b) and 1325(a)(5)(B) to strip down the lien of VCI to the value of the automobile.

First, the Code clearly allows the Debtor to modify the rights of a secured creditor unless the creditor is secured solely by the debtor's principal residence. Since VCI is not secured by the Debtor's principal residence, the Debtor's plan proposes to pay VCI the full amount of the secured portion of its claim in compliance with § 1325(a)(5)(B)(ii).

Secondly, this Court agrees with the courts which have concluded that *Dewsnup* and *Nobelman* do not limit the general availability of lien stripping in Chapter 13 cases.

Therefore, VCI's response to the Debtor's objection to its secured claim will be overruled. VCI will be adjudged to have a secured claim in the amount of $3,250 which will be paid over the life of the plan at 12% interest and an unsecured claim in the amount of $2,434.46 which will be paid as all other unsecured creditors. Upon completion of her Chapter 13 plan and after she has received a discharge, the lien of VCI will be canceled and VCI will be required to deliver any title documents to the Debtor.

A separate judgment consistent with this opinion will be entered in accordance with Federal Rules of Bankruptcy Procedure 7054 and 9021.

**SO ORDERED.**

### *FINAL JUDGMENT*

Consistent with the opinion dated contemporaneously herewith:

**IT IS HEREBY ORDERED AND ADJUDGED** that *Volkswagen Credit, Inc.'s Response to Debtor's Objection to Secured Claim(s) and Other Relief* is overruled and the *Debtor's Objection to Secured Claim(s) and Petition Other Relief (sic)* is sustained.

**IT IS FURTHER ORDERED** that VCI has a secured claim in the amount of $3,250 which shall be paid over the life of the plan at 12% interest and an unsecured claim in the amount of $2,434.46 which shall be paid as all other unsecured creditors.

**IT IS FURTHER ORDERED** that upon the Debtor's completion of her Chapter 13 plan and after she has received a discharge, the lien of VCI on the 1989 VW Fox automobile shall be canceled, and VCI shall deliver any title documents to the Debtor.

**SO ORDERED.**