**In re Paul and Wanda FLOWERS, Debtors.**

**Bankruptcy No. 93 B 23857.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Dec. 19, 1994.

Joseph Wrobel and Andrew E. Houha, Joseph Wrobel, Ltd., Chicago, IL, for debtor.

Peter A. McElvain, Chicago, IL, for Banc One Illinois Corp.

### MEMORANDUM OPINION

RONALD BARLIANT, Bankruptcy Judge.

## I. INTRODUCTION

The Debtors in this chapter 13 case bought a 1992 Bonneville with secured financing from Bank One. They now want to "strip down" Bank One's lien on the car so that they can satisfy that lien by paying only the value of the car, which is less than the total balance remaining due Bank One. Relying upon *In re Hernandez*, 162 B.R. 160, 163 (Bankr.N.D.Ill.1993), Bank One objects, asserting that a lien cannot be stripped down in chapter 13. This Court disagrees with *Hernandez*; therefore, the Debtors' strip down plan has been confirmed.

## II. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B).

## III. DISCUSSION

It is agreed that at the time the Debtors filed their bankruptcy petition, their Bonneville was worth $16,000. They still owed more than $20,000 to Bank One, however. The Debtors' now propose that Bank One's secured claim be reduced to the value of the collateral ($16,000), and that the balance ($4,000) be treated as an unsecured claim. The secured claim will be paid in full over the projected 60 month life of the plan; unsecured claims will be paid only 10 cents on the dollar.

Any discussion of secured claims in bankruptcy begins with section 506(a) of the bankruptcy code (11 U.S.C. sec. 101, *et seq.*) That section divides allowed claims secured by liens into two parts: one is a "secured claim to the extent of the value of [the collateral]"; the other part is "an unsecured claim to the extent the value of [the collateral] is less than the amount of such allowed claim."

The effect of section 506(a) has been dealt with in two Supreme Court decisions heavily relied upon by the court in *Hernandez*, although that court readily concedes that neither decision dealt with the issue here. *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), held that a chapter 7 debtor could not use section 506(d) to strip down an undersecured lien bifurcated by section 506(a). Section 506(d) declares that a lien is void to the extent it secures a

claim "that is not an allowed secured claim." The Supreme Court held that the phrase "allowed secured claim" did not mean "secured claim" as defined in section 506(a) (that is, a claim limited in amount to the value of the collateral), but meant an allowed claim (in the full amount due, without bifurcation) that was secured by a lien.

In *Nobelman v. American Savings Bank*, — U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), the Court held that a home mortgage could not be stripped down to the amount of the section 506(a) secured claim. The Court's holding was based on the language of section 1322(b)(2) that permits the modification of the rights of holders of secured claims, except claims secured by home mortgages. Since Congress prohibited the modification of the rights of home mortgagees, the Court reasoned, a strip down was not permitted.

*Hernandez* reads the Supreme Court authorities as requiring that lien rights survive bankruptcy except to the extent some provision of the bankruptcy code provides otherwise. (Actually, there is nothing special about lien rights in that regard. All rights survive bankruptcy unless the code provides otherwise.) But it is indisputable that some provisions of the code do modify lien rights. Most relevant here, section 722 allows a chapter 7 debtor to redeem certain personal property "from a lien" by paying the "amount of the allowed secured claim...." In that section "allowed secured claim" can only mean the "secured claim" defined in section 506(a) to equal the value of the collateral. If "allowed secured claim" meant the entire claim, as *Dewsnup* construed section 506(d), the only "right" granted by section 722 would be to pay the entire debt—something any creditor can do without recourse to the bankruptcy laws.

Similarly, section 1129(b)(2)(A) allows a debtor to provide in a chapter 11 plan that liens be retained only "to the extent of the allowed amount of such [secured] claims." Again, the "allowed secured claim" in § 1129 means the same thing as "secured claim" in § 506(a)—the portion of the claim equal to the value of the collateral. *See Hernandez*, 162 B.R. at 163. So, again, Congress did

provide for the modification of liens, notwithstanding the supposed policy in favor of the survival of liens. The question here is whether any provision in chapter 13 provides for the modification of liens.

 In fact two sections of chapter 13 provide for the modification of liens. In language that is as plain as language can be, section 1322(b)(2) allows a plan to "modify the rights of holders of secured claims...." *Hernandez* reads a limitation into this provision: "This provision permits a debtor to modify the payment terms of a holder of a secured claim...." 162 B.R. at 166. But section 1322(b)(2), by its own words, does not limit the power to modify the rights of secured creditor to "payment terms." One of the rights of a secured creditor is the right to enforce its lien to the full extent of the contract debt. Nothing in the code or in any Supreme Court decision excludes that right from the rights subject to modification in a chapter 13 plan.

Indeed, in *Nobelman* the Court said that the "rights" of the secured creditor referred to in § 1322(b)(2) are to be defined by state law, and "are reflected in the relevant mortgage instruments...." —— U.S. at ——, 113 S.Ct. at 2108. These rights include "... the right to retain the lien until the debt is paid off, ... and to proceed against petitioners' residence by foreclosure...." *Id.* at ——, 113 S.Ct. at 2110. *Nobelman* held that with respect to home mortgages these rights and the others listed in the opinion could not be modified because § 1322(b)(2) itself excepts home mortgagees from the general rule that the plan may "modify the rights of holders of secured claims." *Id.* at ——, 113 S.Ct. at 2109. If, according to *Nobelman*, "the right to retain the lien until the debt is paid off...." is a right protected from modification by the proviso in § 1322(b)(5), then it must be a right subject to modification in cases where that proviso does not apply. *Id.* at ——, 113 S.Ct. at 2110. In this case, which does not involve a home mortgage, the "rights" subject to modification are, as *Nobelman* held, the creditor's rights under state law, including "the right to retain the lien until the debt is paid off...." *Id.* Therefore, that right may be modified.

■ The second section that allows a chapter 13 plan to strip down a lien to the value of the collateral is the section that *Hernandez* incorrectly read to prohibit that very result. 162 B.R. at 165. Section 1325(a)(5)(B) requires that "with respect to each *allowed secured claim* provided for by the plan ... (i) ... the holder of *such claim* retain the lien securing *such claim;* (ii) and [the present value of plan payments] is not less than the allowed amount of *such claim....*"

■ The "such claim" secured by the lien is the same "such claim" the present value of which must be paid under the plan. They are both the "allowed secured claim." As we have discussed, in section 506(a) the term "secured claim" is defined to be equal to the value of the collateral. It is true that *Dewsnup* defined the term "allowed secured claim" in section 506(d) to mean something else. 502 U.S. 410, 112 S.Ct. at 777. We know, however, that "allowed secured claim" in section 1325(a) has the section 506(a) meaning and is the portion of the total claim equal to the value of the collateral. We know that because of the requirement that the holder of "such claim" get the present value of "such claim." Even *Hernandez* agrees that the payment required is only the value of the collateral. 162 B.R. at 165.

*Hernandez*, however, says that the retained lien secures the entire claim, not only the "allowed secured claim." 162 B.R. at 165. But that is not what the plain language of § 1325(a)(5) says. That section requires only that the creditor retain the lien that secures the allowed secured claim (*i.e.*, "such claim"). The court in *Hernandez* simply ignores the words "such claim" in its paraphrase of § 1325(a)(5):

> [T]he plain language of that provision provides that a Chapter 13 Plan may only be confirmed as to each allowed secured claim if the holder of that claim retains the 'lien' and payments made under the Plan equal the allowed amount of the 'secured claim'. The statute does not use the words 'lien' and 'claim' to mean the same thing. Nothing in that provision says that the secured creditor must retain only part of the lien measurable by collateral value.

162 B.R. at 165. The court's error is in that last sentence. Section 1325(a)(5)(B)(i) *does* say that the secured creditor must retain only the lien to the extent it secures the "allowed secured claim", that is the, claim to the extent of the value of the collateral:

> ... the plan provides that the holder of such claim retain the lien *securing such claim [i.e.,* the "allowed secured claim"].…

*Hernandez*, 162 B.R. at 165.

■ That language does not require that the creditor retain the lien that secures the unsecured claim created by 506(a). If Congress had meant to require the retention of the lien to the extent of the total claim (including the part in excess of the value of the collateral) that section would have excluded the phrase "securing such claim" and simply said that the creditor retain its lien (as the *Hernandez* court said in its incorrect paraphrase), or its lien securing its claim. Instead, Congress limited the lien to the allowed secured claim, that is, the value of the collateral.

■ Perhaps the fundamental error in *Hernandez* lies in its treatment of the legal concept, "lien". *Hernandez* treats liens as if they have some abstract existence apart from the obligations they secure. The bankruptcy code, however, defines "lien" to mean "charge against or interest in property to secure payment of a debt...." § 101(37). A lien is therefore directly related to the debt it secures. It cannot, consistent with this definition, "remain on the automobile, unaffected by bifurcation and modification of its claim." *Hernandez*, 162 B.R. at 166. Here, under § 1325(a)(5)(B), as we have seen, the only lien retained is the lien securing the secured claim; that is, the claim to the extent of the value of the collateral. Therefore, (tracking the language of the statutory definition) the only "charge against or interest in property" the secured creditor retains is that which "secure[s] payment of" the secured claim. Nothing requires that the creditor retain any "charge against or interest in property to secure payment" of the unsecured portion of the creditor's total claim.

Moreover, this reading of the code allows a chapter 13 debtor to have relief comparable to that available to chapter 7 and 11 debtors. The *Hernandez* reading of § 1325(a)(5) deprives a chapter 13 debtor of rights to modify liens equivalent to the redemption rights available to a chapter 7 debtor and the "cram down" rights available to a chapter 11 debtor. 162 B.R. at 165–66. A chapter 13 strip down plan is no different in effect than a chapter 7 redemption (except that in chapter 13 the value of the collateral is paid over time) or a chapter 11 cram down. Why would Congress grant chapter 7 and 11 debtors the right to get collateral free and clear of a lien by paying the value of the collateral, but deny that right to chapter 13 debtors? *Hernandez* offers no reason why Congress would have drawn that kind of a distinction; in fact, there is no such reason.

For these reasons, this Court has entered appropriate orders limiting the creditor's lien to the secured claim, which is in the amount of the value of the collateral, and confirming the Debtors' chapter 13 plan.