### In re BANK ONE, CHICAGO, NA, Appellant,

v.

### Paul FLOWERS, et al., Appellees.

### No. 94 C 4923.

United States District Court, N.D. Illinois, Eastern Division.

June 30, 1995.

---

**3.** Ohio Rev.Code § 2329.66(A)(4)(a) provides that a debtor is entitled to an exemption of $400 for "money on deposit with a bank."

Peter Alan McElvain, Banc One Illinois Corp., Chicago, IL, for appellant.

Andrew Eric Houha, Joseph Wrobel, Ltd., Chicago, IL, for Paul and Wanda Flowers.

Craig Phelps, Chapter 13 Trustee, Chicago, IL.

## *MEMORANDUM OPINION AND ORDER*

ALESIA, District Judge.

This matter is before the court on Bank One's appeal from the Bankruptcy Court's order confirming the debtors' Chapter 13 plan. *In re Flowers*, 175 B.R. 698 (Bankr. N.D.Ill.1994). For the reasons outlined below, the Bankruptcy Court's order is affirmed.

## I.  *BACKGROUND*

The debtors in this case, Paul and Wanda Flowers ("Debtors"), bought a 1992 Bonneville with secured financing from Bank One, Chicago, NA ("Creditor"). Sometime after purchasing the Bonneville, Debtors filed a petition for relief under Chapter 13 of the United States Bankruptcy Code ("Code"), 11 U.S.C. § 1301 *et seq.* In accordance with the Code, Debtors filed a Chapter 13 payment plan which proposed to pay the secured creditors 100% of their "allowed secured claims" and unsecured creditors 10% of their "allowed unsecured claims."

In response to Debtors' bankruptcy petition, Creditor filed a proof of claim as a secured creditor for the entire amount of its debt secured by the Bonneville ($20,683.93). 11 U.S.C. § 501(a). Debtors, however, objected to Creditor's secured claim. 11 U.S.C. § 502(a). Through their objection, Debtors sought to bifurcate Creditor's claim into an "allowed secured claim," to the extent of the present market value [1] of the collateral, and an "allowed unsecured claim" for the remainder of the indebtedness. Debtors contended that sections 506(a) and 1322(b)(2) of the Code permitted such bifurcation.

In addition, Debtors sought to limit Bank One's *in rem* lien rights, outside of bankruptcy, to the amount of the § 506(a) "allowed secured claim." 11 U.S.C. § 506(d). In other words, Debtors tried to "strip down" or "cram down" Creditor's lien on the car so that they could satisfy the lien by paying

only the current value of the car. If successful, Creditor's lien with respect to the unsecured $4,683.93 would, in effect, disappear.

The Bankruptcy Court approved Debtors' proposed payment plan and issued an order allowing Debtors to "strip down" Creditor's lien rights. *In re Flowers*, 175 B.R. 698 (Bankr.N.D.Ill.1994). This permitted Debtors to reduce Creditor's lien rights to the amount of the "allowed secured claim" ($16,-000.00) and to extinguish Creditor's *in rem* lien rights upon completion of Debtor's approved Chapter 13 plan.

## II.  *DISCUSSION*

■ No issues of fact are raised on appeal. Therefore, this court need only perform a *de novo* review of the challenged conclusions of law. *Matter of Yonikus*, 996 F.2d 866, 868 (7th Cir.1993).

In its brief on appeal, Creditor raises the following four arguments why Debtors' Chapter 13 reorganization plan should not have been approved by the Bankruptcy Court: (1) the Supreme Court's decision in *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), which held that lien strip downs are prohibited in Chapter 7 liquidations, applies with equal force in Chapter 13 reorganizations; (2) Creditor's lien survives Chapter 13 reorganization absent consent or surrender of the collateral to Creditor; (3) Creditor should receive either an immediate cash redemption or reaffirmation of the entire debt where the Debtors seek to retain Creditor's collateral; and (4) judicially voiding Creditor's lien violates the Takings Clause of the Fifth Amendment. The court addresses each in turn.

### A.  *Strip Downs in Chapter 13*

The issue of whether lien strip downs are proper in bankruptcy proceedings has been addressed in two Supreme Court decisions. *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992); *Nobelman v. American Savings Bank*, —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). An anal-

---

**1.** The parties stipulated as to the fair market value of the Bonneville ($16,000.00) for § 506(a)    bifurcation purposes.

ysis of both cases leads to our decision in this one.

In *Dewsnup,* creditor loaned $119,000 to the debtors. As security for the loan, the debtors executed a deed of trust granting the creditor a lien on two parcels of Utah farmland owned by the debtors. The debtors defaulted within a year and, soon thereafter, filed for bankruptcy under Chapter 11. That bankruptcy petition was dismissed, as was a subsequent Chapter 11 petition, but eventually the debtor (by now, one was deceased) filed a petition seeking liquidation under Chapter 7.

As in the case now before the court, the debtor in *Dewsnup* was undersecured. That is, the amount of the debt (approximately $120,000) was greater than the fair market value of the collateral (only $39,000). Consequently, the debtor brought an adversary proceeding pursuant to § 506 of the Code attempting to avoid a portion of the lien. The debtor argued that the security-reducing provision of § 506(a) and the lien-voiding provision of § 506(d) worked together to reduce the lien to the value of the land.[2]

To resolve the issue before it, the Supreme Court was forced to determine whether the words "allowed secured claim," as used in § 506(d), were defined by the words "secured claim," as used in § 506(a). *Id.* at 416–17, 112 S.Ct. at 777–78. Had the Court found that the words in § 506(a) meant the same as those in § 506(d), "lien stripping" would have been statutorily allowed in Chapter 7 proceedings. However, the Court disagreed with the debtor and held that the words "allowed secured claim" in § 506(d) meant an allowed claim (in the full amount due, without bifurcation) secured by the lien. *Id.* Thus, the Court's decision effectively prohibited lien "strip downs" in Chapter 7 proceedings.

The Court also added "[w]ere we writing on a clean slate, we might be inclined to agree with petitioner that the words 'allowed secured claim' must take the same meaning in § 506(d) as in § 506(a). But, given the ambiguity in the text, we are not convinced that Congress intended to depart from the pre-Code rule that liens pass through bankruptcy unaffected." *Id.* at 417, 112 S.Ct. at 778. Furthermore, in a footnote, the court stated, "Accordingly, we express no opinion as to whether the words 'allowed secured claim' have a different meaning in other provisions of the Bankruptcy Code." *Id.* n. 3.

The second relevant Supreme Court case is *Nobelman v. American Savings Bank,* —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). In *Nobelman,* creditor loaned debtors $68,230 for the purchase of their home in Texas. In exchange, debtors executed a promissory note payable to the creditors and secured by a deed of trust on the home. Soon thereafter, after falling behind on their mortgage payments, debtors filed a petition for relief under Chapter 13 of the Bankruptcy Code.

Once again, however, debtors were undersecured. The creditor's claim against the debtors was for $71,335, while the residence was only valued at $23,500. Relying on § 506, debtors' Chapter 13 payment plan proposed to pay the creditor only the fair market value of the collateral ($23,500 plus prepetition arrearages) and treat the remainder of the creditor's claim as unsecured. Meanwhile, the creditor objected to the confirmation of the plan, arguing that the proposed bifurcation modified the creditor's rights as a homestead mortgagee, in violation of 11 U.S.C. § 1322(b)(2).

Section 1322(b)(2) provides that a plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence ..." The parties agreed that the provision applied to their case; however, they were in dispute as to whether the rights of the creditor were actually being modified. The debtors contended that § 506(a) operates automatically to adjust downward the amount of the creditor's claim before any disposition proposed in the

---

**2.** § 506(a) provides, "An allowed claim of a creditor secured by a lien or property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ..."

§ 506(d) states, "To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void ..."

debtors' proposed Chapter 13 plan. Therefore, they argued that the creditor was the holder of a secured claim only in the amount of $23,500, the value of the collateral.

The court disagreed and concentrated its discussion on what the term "rights" meant in § 1322(b)(2). *Nobelman,* —— U.S. at ——, 113 S.Ct. at 2109–11. After noting that the term was not defined in the Code, it turned to state law. *Id.* at ——, 113 S.Ct. at 2110. Under Texas law, the court found that the creditor's rights included "the right to repayment of the principal in monthly installments over a fixed term at specified adjustable rates of interest, the right to retain the lien until the debt is paid off, the right to accelerate petitioners' residence by foreclosure and public sale, and the right to bring an action to recover any deficiency remaining after foreclosure." *Id.* (citations omitted). *Id.* Consequently, the court found that if § 506 was used in the way the debtors proposed, the creditor's right to retain its lien until payoff would have been modified. *Id.* Therefore, because § 1322(b)(2) prohibits such a modification in the residential mortgage case, the court held for the creditor and denied confirmation of the Chapter 13 plan. *Id.* at ——, 113 S.Ct. at 2111.

■ This court is now asked to decide what a number of courts around the country have already decided: whether lien stripping is permissible in the Chapter 13 context when the collateral is not the debtor's principal residence. The overwhelming majority of courts have held that it is permissible.[3] This court agrees.

Creditor first contends that § 506(d) controls lien avoidance outside of bankruptcy and prohibits lien "strip downs" in both Chapter 7 and Chapter 13 proceedings. In other words, it contends that the Supreme Court's decision in *Dewsnup* should be applied to Chapter 13 bankruptcy proceedings. Specifically, Creditor states that "§ 506(d)

applies with equal force to Chapter 7 liquidations and Chapter 13 reorganizations and [it applies] without classification of the type of collateral at issue." (Appellant's Brief, p. 6).

■ This court agrees with Creditor in that § 506(d) applies to Chapter 13 reorganizations and Chapter 7 liquidations with "equal force." However, the court holds, in accordance with the majority of federal courts cited above, that § 506(d) has a different effect in Chapter 13 reorganizations than that mandated by the Supreme Court's *Dewsnup* decision in Chapter 7 liquidations. That is, while § 506(d) is to be applied with "equal force" in relation to both Chapter 13 and Chapter 7 proceedings, it has a different effect in the two proceedings.

■ Section 506 is to be applied by bankruptcy courts when a party in interest objects, pursuant to § 502, to the value of a proof of secured claim filed by a creditor in the bankruptcy proceedings. Section 506 states, in pertinent part:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in ... such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. [ ... ]

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void[.] [ ... ]

11 U.S.C. § 506. It is clear then that § 506 is designed to determine the value and amount of a creditor's secured claim when the creditor's claim is undersecured in relation to the property securing the debt. In order to achieve its given purpose, § 506(a) divides or bifurcates allowed claims into two

---

**3.** *In re Hernandez,* 175 B.R. 962 (N.D.Ill.1994); *In re Lee,* 162 B.R. 217 (D.Minn.1993); *In re Wilson,* 174 B.R. 215 (Bankr.S.D.Miss.1994); *In re McDonough,* 166 B.R. 9 (Bankr.D.Mass.1994); *In re Cooke,* 169 B.R. 662 (Bankr.W.D.Mo.1994); *In re Schultz,* 153 B.R. 170 (Bankr.S.D.Miss. 1993); *In re McDade,* 148 B.R. 42 (Bankr.S.D.Ill. 1992); *In re Pickett,* 151 B.R. 471 (Bankr. M.D.Tenn.1992); *In re Butler,* 139 B.R. 258 (Bankr.E.D.Okla.1992); *But see In re Blue Pacific Car Wash, Inc.,* 150 B.R. 434 (W.D.Wis.1992); *see also United Carolina Bank v. Hall,* 993 F.2d 1126 (4th Cir.1993); *Sapos v. Provident Institution of Savings in Town of Boston,* 967 F.2d 918 (3d Cir.1992); *In re Bellamy,* 962 F.2d 176 (2d Cir.1992).

parts: (1) a secured claim to the extent of the value of [the collateral]; and (2) an unsecured claim to the extent the value of [the collateral] is less than the amount of such allowed claim. Following § 506(a) treatment, § 506(d) seemingly acts to void any lien against a debtor that is not an "allowed secured claim."

Creditor is incorrect in stating that the words "allowed secured claim," as used in § 506(d), must consistently be interpreted to have the meaning attached by the Supreme Court in its *Dewsnup* decision. In fact, the *Dewsnup* decision in no manner dictated that its statutory construction and textual analysis of § 506(d) should extend beyond Chapter 7 of the Bankruptcy Code. Rather, the Court clearly stated that it did not intend for its decision to have any ramifications on bankruptcy proceedings outside of Chapter 7. Justice Blackmun, in his majority opinion, wrote:

> The foregoing recital of the contrasting positions of the respective parties and their amici demonstrates that § 506 of the Bankruptcy Code and its relationship to other provisions of that Code do embrace some ambiguities. *See* Collier on Bankruptcy, ch. 506 and, in particular, para. 506.07 (15th ed. 1990). Hypothetical applications that come to mind and those advanced at oral argument illustrate the difficulty of interpreting the statute in a single opinion that would apply to all possible fact situations. We therefore focus on the case before us and allow other facts to await their legal resolution on another day.

*Dewsnup*, 502 U.S. at 416–17, 112 S.Ct. at 777–78. Justice Blackmun later stated that "we express no opinion as to whether the words 'allowed secured claim' have different meaning in other provisions of the Bankruptcy Code." *Id.* at 417, 112 S.Ct. at 778.

■ This court, therefore, recognizes that the Supreme Court did not intend for its interpretation of § 506(d)'s phrase, "allowed secured claim," to extend beyond the context of the facts presented in *Dewsnup* and other similar Chapter 7 proceedings. Accordingly,

this court is free to give § 506(d)'s phrase "allowed secured claim" a different meaning in the Chapter 13 context, provided that such meaning conforms with Congress' stated and implied intentions in enacting Chapter 13.

■ In fact, Congress added Chapter 13 to the Bankruptcy Code in an effort to help debtors protect their assets from liquidation under Chapter 7 and to insure that the available bankruptcy proceedings would provide debtors with a fresh start after the bankruptcy process. William E. Callahan, Jr., *Dewsnup v. Timm and Nobelman v. American Savings Bank: The Strip Down of Liens in Chapter 12 and Chapter 13 Bankruptcies*, 50 Wash. & Lee L.Rev. 405, 424–25 (Winter 1993), *citing* H.R.Rep. No. 595, 95th Cong., 2d Sess. 118 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5963, 6078–79. As such, Congress realized that the goal of providing debtors with a fresh start is furthered by allowing debtors to own property free and clear of creditor's liens after designing and completing a plan of reorganization. *In re Hernandez*, 175 B.R. 962, 966 (N.D.Ill.1994).

Within Chapter 13, Congress incorporated three separate and distinct provisions, each of which is relevant to the contested issue. These provisions, when viewed as a whole, indicate that Congress intended to provide Chapter 13 debtors with the opportunity to "strip down" the "allowed unsecured claims" of their creditors. In other words, these provisions tend to imply that the words "allowed secured claim," as used in § 506(d), mean "secured claim," as defined in § 506(a), in Chapter 13 proceedings.

■ Section 1322 outlines the required contents and the optional contents of a Chapter 13 debtor's proposed payment plan.[4] Section 1322(b) provides, in pertinent part:

(b) ... [T]he plan may ...

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffect-

---

**4.** 11 U.S.C. § 1321 requires Chapter 13 debtors to file a payment plan as part of their bankruptcy

petition.

ed the rights of holders of any class of claims[.]

11 U.S.C. § 1322(b). Section 1322, therefore, permits the modification of the "rights" of holders of secured claims, except claims secured by home mortgages. In this case, Creditor's claim is secured by Debtor's car, not Debtor's principal residence, and § 1322(b)(2) therefore permits Debtor's Chapter 13 payment plan to modify the "rights" of Creditor's secured claim. However, this court must look to state law in order to determine what "rights" Creditor possesses under state law. *Nobelman,* —— U.S. at ——, 113 S.Ct. at 2110. One of the rights held by creditors in Illinois is the right to repossess property subject to a valid lien, pursuant to 810 ILCS 5/9–503. *Hernandez,* 175 B.R. at 966. Therefore, § 1322(b)(2) seems to dictate that a Chapter 13 debtor can modify an Illinois secured creditor's *in rem* lien rights.

■■■ Section 1325 addresses the rules associated with the confirmation of a Chapter 13 debtor's proposed payment plan. Section 1325 states in pertinent part:

(a) ... [T]he court shall confirm a plan if
...

(5) with respect to each allowed secured claim provided for by the plan ...

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) The debtor surrenders the property securing such claim to such holder[.]

11 U.S.C. § 1325(a). Section 1325, therefore, requires a court to confirm a Chapter 13 debtor's proposed payment plan if the plan meets all of the requirements set forth within the section. In this case, Creditor has not accepted Debtor's payment plan (§ 1325(a)(5)(A)) and Debtor has not surrendered Creditor's security interest to Creditor

(§ 1325(a)(5)(C)). Thus, § 1325(a)(5)(B) is the only subsection at issue.

■■■ Under § 1325(a)(5)(B), a debtor's payment plan cannot be confirmed by a bankruptcy court unless it provides that secured claim holders "retain the lien securing such claim," and unless the value of the property distributed under the plan is at least equal to the "allowed amount of such claim." The term "such claim," as used in § 1325(a)(5)(B), clearly refers to the phrase "allowed secured claim" as used in § 1325(a)(5). Therefore, § 1325(a)(5)(B) is interpreted by this court to mean that a bankruptcy court must confirm a Chapter 13 debtor's payment plan if such plan provides that the holders of allowed secured claims retain the liens securing such allowed secured claims and if the value of the property distributed under the plan is no less than the value of the allowed secured claims.

■■■ Only one issue remains then in relation to § 1325(a)(5)—whether the term "allowed secured claim" mean the same in this section as it does in § 506(a)? Both applicable legislative history and precedent suggests that the answer to that question is yes. On September 28, 1978, Representative Edwards stated:

Of course, the secured creditors' lien only secures the value of the collateral and to the extent property is distributed of a present value equal to the allowed amount of the creditor's secured claim the creditor's lien will have been satisfied in full. Thus the lien created under section 1325(a)(5)(B)(i) is effective only to secure deferred payments to the extent of the amount of the allowed secured claim.

124 Cong. Rec. H11107 (daily ed. Sept. 28, 1978) (statement of Rep. Edwards setting forth results of conference committee), reprinted in Appendix 3 Collier on Bankruptcy IX–122 (15th ed. 1993). Congressman Edwards' statement indicates that the term "allowed secured claim" in § 1325(a)(5) means the same as that defined in § 506(a). Furthermore, Justice Scalia has noted the connection between § 506(a) and § 1325(a)(5). In his dissenting opinion in *Dewsnup,* Justice Scalia stated:

When the phrase ["allowed secured claim"] appears outside of § 506, it invariably means what § 506(a) describes: the portion of a creditor's allowed claim that is secured after the calculations required by that provision have been performed. *See, e.g.,* ... § 1325(a)(5) (same with respect to "allowed secured claims" in individual reorganizations).

*Dewsnup,* 502 U.S. at 421, 112 S.Ct. at 780 (Scalia, J., dissenting). Therefore, it seems clear that the language of § 1325(a) is connected with the language of § 506(a) and only requires that Chapter 13 creditors retain an enforceable lien on the "allowed secured claim," as described by 506(a). In other words, § 1325(a) only requires that Chapter 13 creditors retain an enforceable lien in an amount equal to the value of the collateral or security interest. As such, § 1325(a) appears to mandate the confirmation of payment plans that contain "strip down" provisions, provided that such payment plans satisfy all other § 1325 conditions.

■ Section 1327 addresses the effect of a bankruptcy court's confirmation of a Chapter 13 debtor's proposed payment plan. Section 1327 provides:

(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

11 U.S.C. § 1327. Section 1327, therefore, permits a debtor's proposed payment plan to be confirmed by a bankruptcy court, even if a creditor objects to the plan. Most important, however, is the fact that § 1327 serves to illustrate Congress' intent to give Chapter 13 debtors a fresh start. That is, Congress

intended §§ 1327(b) & (c) to vest all property in the debtor free and clear of any creditor's claim or interest upon confirmation of a payment plan. Therefore, any decision allowing creditors to retain *in rem* lien rights on debtor's personal property would be contrary to Congress' stated Chapter 13 goals and intentions.

Finally, this court notes that had the Supreme Court intended *Dewsnup* to apply specifically to Chapter 13 proceedings, it most likely would have stated such in *Nobelman.* However, there, the Court focused on § 1322(b)(2), which explicitly prohibits the modification of the rights of residential mortgage lenders. *Nobelman,* —— U.S. at ——, 113 S.Ct. at 2109. By doing so, the Court implied that § 1322(b)(2) sanctions "lien stripping" in cases where the creditor's lien does not secure the debtor's principal residence.

■ Therefore, in accordance with Chapter 13's provisions, with the vast majority of precedent, and with the Supreme Court's decision in *Nobelman,* this court holds that the reasoning of the Supreme Court's decision in *Dewsnup* does not extend to Chapter 13 proceedings. That is, the phrase "allowed secured claim," as used in § 506(d), is defined by § 506(a) in Chapter 13 proceedings. As such, the words "allowed secured claim" in § 506(d) mean "the claim limited in amount to the value of the collateral," rather than "the claim in the full amount due, without bifurcation." Appellant's first contention of error is therefore overruled.

**B. *Section 1325(a)(5)***

■ As discussed above, § 1325 addresses the rules associated with the confirmation of a Chapter 13 debtor's proposed payment plan. Section 1325(a)(5) states, in relevant part:

(a) ... [T]he court shall confirm a plan if ...

(5) with respect to each allowed secured claim provided for by the plan ...

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien secur-

ing such claim; and (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder[.]

11 U.S.C. § 1325(a). Creditor contends that the distinction in terminology between "such claim" at § 1325(a)(5)(B)(i), controlling surviving lien rights, and "allowed amount of such claim" at § 1325(a)(5)(B)(ii), controlling minimum payments within the plan, confirms that liens are intended to survive in Chapter 13 proceedings until they are paid in full or until the appropriate collateral is surrendered to the appropriate creditor. Creditor states that "[t]he plain statutory construction provided within § 1325(a)(5)(B) squarely tracks the distinction made by the Supreme Court in *Dewsnup* and further squarely tracks the *Dewsnup* presumption that lien rights survive bankruptcy absent a clear message by Congress to the contrary." (Appellant's Brief, p. 9).

In simpler terms, Creditor contends that the phrase "such claim," as used in § 1325(a)(5)(B), should take on *Dewsnup's* § 506(d) definition or meaning. Thus, it argues that, absent the creditor's consent or the debtor's surrender of collateral to creditor, § 1325(a)(5)(B) explicitly provides for the full amount of the lien, without bifurcation, to be retained by creditors in Chapter 13 proceedings.

While this court concedes that Creditor presents a compelling textual argument, the court holds (as stated above) that the term "such claim," as used in § 1325(a)(5)(B), clearly refers to the phrase "allowed secured claim" as used in § 1325(a)(5). Therefore, this court interprets § 1325(a)(5)(B) to mean that a bankruptcy court must confirm a Chapter 13 debtor's payment plan if such plan provides that the holders of allowed secured claims (in the § 506(a) sense) retain the liens securing such allowed secured claims and if the value of the property distributed under the plan is equal to the value of such allowed secured claims.

This interpretation is supported (as discussed above) by accompanying sections of Chapter 13 (§§ 1322, 1327) and by relevant § 1325(a) legislative history. In fact, this court finds Representative Edwards' statements to be a "clear message by Congress" revealing that lien rights are not to survive Chapter 13 bankruptcy proceedings. As such, the appellant's second contention of error is similarly overruled.

### C. *Section 1325(a)(4)*

■ Section 1325(a)(4) states that:

(a) ... [T]he court shall confirm a plan if ...

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under Chapter 7 of this title on such date[.]

11 U.S.C. § 1325(a). Creditor contends that "[the] disparity in timing between hypothetical collateral value determination and actual payment ... impairs Bank One's collateral rights and ... [prevents the plan from] distribut[ing] to Bank One at least what Bank One would have received under a Chapter 7 liquidation." (Appellant's Brief, p. 10). This court disagrees and holds that the payment plan approved by the Bankruptcy Court satisfies § 1325(a)(4)'s requirements.

Had Debtor in this case filed under Chapter 7 rather than Chapter 13, he could have redeemed the collateral under § 722, "by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien." 11 U.S.C. § 722. That is, the Debtor could have kept the car by paying Bank One $16,000.00 in cash at the time of the liquidation. Under Debtor's approved Chapter 13 payment plan, Debtor will be allowed to keep the car in return for payments totaling roughly $16,460.00 in present value terms (*i.e.,* the $16,000 "allowed secured claim" plus 10% of the $4,683.93 "allowed unsecured claim") over a period of years. Therefore, by making a quick comparison, it is obvious that the unsecured

creditor in fact does better under Chapter 13 than under Chapter 7. Accordingly, the requirement in Section 1325(a)(4) is satisfied and Creditor's third issue on appeal is rejected.

### D. *Strip Downs and the Takings Clause*

■■■■ Creditor correctly contends that its security interest in Debtor's car is property for the purposes of the takings clause. *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 589, 55 S.Ct. 854, 863, 79 L.Ed. 1593 (1935); *Armstrong v. United States*, 364 U.S. 40, 44–46, 80 S.Ct. 1563, 1566–67, 4 L.Ed.2d 1554 (1960). However, Creditor is incorrect in stating that a "strip down" of its lien in a Chapter 13 proceeding would result in a constitutional violation.

The fifth amendment to the Constitution provides that "private property [shall not] be taken ... without just compensation." U.S. CONST. amend. V. At the same time, however, Article I, section 8 of the Constitution grants Congress the power to create "uniform laws on the subject of Bankruptcies throughout the United States." U.S. CONST. art. I, § 8. As such, these constitutional provisions often contradict each other in effect.

The Supreme Court has recognized that "[t]he bankruptcy power, like the other great substantive powers of Congress, is subject to the Fifth Amendment." *Radford*, 295 U.S. at 589, 55 S.Ct. at 863. Similarly, however, the Seventh Circuit has noted that "not every prospective diminution in the rights of creditors can be an unconstitutional taking; for such a conclusion would come close to nullifying the Constitution's bankruptcy clause." *In re Thompson*, 867 F.2d 416, 422 (7th Cir.1989).

In *Thompson*, a lien creditor argued that Section 522(f)(2)(B) of the Bankruptcy Code was unconstitutional because that provision authorized the creditor's lien on tractors and other items to be destroyed without just compensation. The Seventh Circuit disagreed and stated:

> But lien avoidance is not a taking when it is authorized before the creditor makes the secured loan in question, which is the case here. There is no taking when the credi-

tor is simply told that if he extends security to a borrower who later goes bankrupt, he may not be able to enforce his security interest to the hilt. He can protect his security by reducing the amount of the loan or refusing to deal with borrowers who are not fully creditworthy; he can demand compensation for the added risk by charging a higher interest rate; he can demand additional collateral; or he can take some combination of these self-protective measures. In effect he can arrange compensation in advance for the taking of his security interest; he has no need to invoke the protection of the just-compensation clause of the Fifth Amendment.

*Id.* Similarly, in this case, Creditor was well aware that Debtor could eventually go bankrupt and take refuge under the bankruptcy laws. Therefore, the strip down that occurred in this case does not constitute a taking "when it is authorized before the creditor makes the secured loan in question, which is the case here."

### CONCLUSION

For all of the foregoing reasons, the decision of the Bankruptcy Court is affirmed.