224 B.R. 360 (1998)
In re Thomas Lamar THOMPSON, Debtor.
In re Joe Bernard WHITE, Jr., Debtor.
In re Ned Ish MELVILLE, Debtor.
In re Bernita Elaine SULLIVAN, Debtor.
In re Jason David PONDER, Debtor.
In re Lisa Renee HORTON, Debtor.
In re Ethyl Marie RAMSEY, Debtor.
In re Carl R. PICKRON, and Sheila E. Pickron, Debtors.
In re James Frank GETZ, and Carrie Ann Getz, Debtors.
In re Sandra A. GILKEY, Debtor.
In re Terry VANCE, and Jennifer Vance, Debtors.
In re Antonio Galan CERVANTES and Rosa Rebollozo Cervantes, Debtors.
In re Gary Clint BRADBURY, Debtor.
In re Scott Patrick ROWLAND, and Jan Darlene Rowland, Debtors.
In re Wilson Cleve MARTER, Debtor.
In re Tommy Dewayne BLEVINS, and Sandra Kay Blevins, Debtors.
In re Georgia BLACK, Debtor.
In re Julianne Marie PACE, Debtor.
In re John Wayne CRAWFORD, and Verda Esther Crawford, Debtors.
In re Charles John GEORGOULIS, and Linda Sue Georgoulis, Debtors.
In re Geoffrey Earl HIRSCH, Debtor.
In re Kathryn Jean DONALDSON, Debtor.
In re James ZEEB, Debtor.
In re Gerardo GONZALES, and Lucy Gonzales, Debtors.
In re Cherryl E. JOHNSON, Debtor.
In re George Michael CALAGNA, and Sharon Kay Calagna, Debtors.
In re Marcus Lee McCUIN, Debtor.
In re Patricia Ann PROCTOR, Debtor.
In re Paul Everett TATE, Jr., Debtor.
In re Stephanie Annette DYE, Debtor.
In re Richard Lee HACKETT, and Jody Renee Hackett, Debtors.
In re Robert Earl HAMILTON, Debtor.
In re Hubert Lee SPIVEY, and Majuanda Rene Wooten Spivey, Debtors.
In re Erik Lloyd PERRY, and Tichina Perry, Debtors.
In re Leonides SANCHEZ, Debtor.
In re Paul Francis CRISAFULLI, Debtor.
In re Pamela Ann GORETSKI, Debtor.
In re Anthony SMITH, and Sylvia Lee Smith, Debtors.
In re Ivan Maurice CONWAY, Debtor.
In re Godarz Farrokh SEPEHR, Debtor.
In re Everett Don WILLIAMS, Debtor.
In re Brenda Denise TYLER, Debtor.
In re Dorothy Faye BONNER, Debtor.
In re Bernard G. GILLIAM, and Evelyn M. Gilliam, Debtors.
In re John Travis GLOVER, and Amy Lea Glover, Debtors.
In re Albert Mack SCARBOROUGH, Debtor.
In re Linda Opal BREEDON, Debtor.
In re James Garvey CAMP, Debtor.
In re Bobbie Carol SMALLWOOD, Debtor.
In re Brenda Ann BROWN, Debtor.
In re Barbara Ann MADISON, Debtor.
In re Charles RICHARDSON, Debtor.
*361 In re James Richard WALTON, Debtor.
In re Brenda Evette JONES, Debtor.
In re Betty Ann MUESSING, Debtor.
In re Vivan Clarence HARDY, Jr., and Pamela Sue Hardy, Debtors.
In re Walter Jene BYRNE, Debtor.
In re Tracy Lynette BATES, Debtor.
In re Ethel Jean GRAY, Debtor.
In re Billy Norris BOWENS, Debtor.
In re Randy Louis PATRICK, and Sharon Anne Patrick, Debtors.
In re Michael Troy DRUCK, and Debbie Sue Druck, Debtors.
In re Donald Gene CHAPMAN, Debtor.
In re Louis Denice KINGTON, Debtor.
In re Keith Clay KIRBY, and Donna Sue Kirby, Debtors.
In re Ector RODRIGUEZ, and Carolyn Asa Rodriguez, Debtors.
In re Kevin Lamar McNEAL, and Chandra Nicole McNeal, Debtors.
In re Ronnie Wayne WESSON, and Carol Ann Wesson, Debtors.
In re Daniel Oneal VAULT, and Shirel Denise Vault, Debtors.
In re Michael James PEZET, and Dana Kristina Pezet, Debtors.
In re Robert Myron EVANS, and Patricia Diane Evans, Debtors.
In re Angela Denice MOODY, Debtor.
In re Jeffery Edward WOOTEN, and Tina Michelle, Debtors.
In re Kathy Gay DUNAHOO, Debtor.
In re Michael Ray FARMER, and Denise Elaine Farmer, Debtors.
In re Leann Michelle PHILLIPS, Debtor.
In re Dwight Milton GRANGER, Debtor.
Nos. 396-39250-HCA-13, 397-30752-HCA-13, 397-31272-HCA-13, 397-31454-HCA-13, 397-31455-HCA-13, 397-31479-HCA-13, 397-31836-HCA-13, 397-31990-HCA-13, 397-31993-HCA-13, 397-31995-HCA-13, 397-31998-HCA-13, 397-32005-HCA-13, 397-32093-HCA-13, 397-32383-HCA-13, 397-32588-HCA-13, 397-32596-HCA-13, 397-32665-HCA-13, 397-32782-HCA-13, 397-32800-HCA-13, 397-32804-HCA-13, 397-32805-HCA-13, 397-32823-HCA-13, 397-32841-HCA-13, 397-32944-HCA-13, 397-32946-HCA-13, 397-33063-HCA-13, 397-33143-HCA-13, 397-33152-HCA-13, 397-33367-HCA-13, 397-33386-HCA-13, 397-33403-HCA-13, 397-33406-HCA-13, 397-33408-HCA-13, 397-33456-HCA-13, 397-33601-HCA-13, 397-33732-HCA-13, 397-33808-HCA-13, 397-33895-HCA-13, 397-34038-HCA-13, 397-34177-HCA-13, 397-34461-HCA-13, 397-34470-HCA-13, 397-34648-HCA-13, 397-34740-HCA-13, 397-34970-HCA-13, 397-34972-HCA-13, 397-35005-HCA-13, 397-35446-HCA-13, 397-35463-HCA-13, 397-35533-HCA-13, 397-36192-HCA-13, 397-36311-HCA-13, 397-36507-HCA-13, 397-36772-HCA-13, 397-36779-HCA-13, 397-36808-HCA-13, 397-36809-HCA-13, 397-36963-HCA-13, 397-36969-HCA-13, 397-37048-HCA-13, 397-37346-HCA-13, 397-37441-HCA-13, 397-37679-HCA-13, 397-37680-HCA-13, 397-37752-HCA-13, 397-37757-HCA-13, 397-38140-HCA-13, 397-38174-HCA-13, 397-38380-HCA-13, 397-38535-HCA-13, 397-38545-HCA-13, 397-38752-HCA-13, 397-38896-HCA-13, 397-39014-HCA-13, 397-39052-HCA-13, 397-39623-HCA-13, 397-39887-HCA-13.
United States Bankruptcy Court, N.D. Texas, Dallas Division.
August 27, 1998.
*362 Greg Arnove, Office of Standing Chapter 13 Trustee, Dallas, TX, for Tom Powers, Standing Chapter 13 Trustee.
Stephanie R. Jensen, Michael C. Prindible, Special Assistant U.S. Attorneys, Dallas, TX, for The Internal Revenue Service.
Pamela Arnold Bassel, Law, Snakard & Gambill, Fort Worth, TX, J. Ward Holliday, David Woods, J. Ward Holliday & Associates, Dallas, TX, for Secured Creditors.
Charles L. Kennon, III, Law Offices of Johnson & Johnson, P.C., Dallas, TX, Areya Holder Chessmore, Julianne M. Parker, Julianne M. Parker, P.C., Dallas, TX, Mark S. Rubin, Shelly Verdin, Rubin & Associates, Dallas, TX, for Debtors.

MEMORANDUM OPINION ON LIEN STRIPPING CHAPTER 13 PLANS
HAROLD C. ABRAMSON, Bankruptcy Judge.
Came before the Court for hearing, confirmation of the debtors' Chapter 13 plans and objections thereto by various secured creditors in the above styled cases. This memorandum opinion constitutes findings of fact and conclusions of law under Federal Rules of Bankruptcy Procedure 7052 and 9014. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 151, and the standing order of reference in this district. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (L) and (O).
I. Background
In this district, each court has a designated afternoon of the month on which it holds hearings on confirmation of Chapter 13 plans. On these days, the procedure is as follows: a prehearing conference is held at the Office of the Standing Chapter 13 Trustee for the Northern District of Texas ("Trustee") in the morning, at which time interested parties and/or the Trustee may indicate objections to the plans as proposed; the parties then bring those objections before the court in the afternoon.
The debtors in each of the above styled cases proposed plans that received objections from creditors to the following language that was stamped onto the face of each plan:
All Secured Creditors' liens and tax liens will be released after the Value of their Allowed Secured Claim is paid through the plan. Car lenders will release title back to the Debtor after receiving the value of their Allowed Secured Claims.
The secured creditors' position is that their liens should not be released until all of the plan payments have been made under the *363 debtors' plans and the debtors have received a discharge. At the time of the hearing the Court took the matter under advisement and asked the parties to file briefs for their respective positions. The Court has conditionally confirmed the plans on an interim basis subject to its decision on this issue and has made similar orders on the plans that have come before it for confirmation since the matter was taken under advisement. This opinion therefore, addresses each of those debtors' cases.
II. Issue
The issue for the Court to determine is whether a Chapter 13 plan, which provides for the release of an undersecured creditor's lien upon full payment of its allowed secured claim, but prior to completion of the Chapter 13 plan and receipt of a discharge, may be confirmed over the creditor's objection.
III. Analysis
A Chapter 13 creditor's undersecured claim is bifurcated, under 11 U.S.C. § 506(a), into two claims: (1) a secured claim equal to the value of the collateral; and (2) an unsecured claim equal to the amount of the allowed claim that exceeds the value of the collateral.[1] Bankruptcy Code § 1325 then permits the Court to confirm a plan over the objection of the holder of a secured claim if:
(i) the plan provides that the holder of such claim retain the lien securing such claim; and
(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim.[2]
However, § 1325(a)(5)(B) does not address the issue before the court, i.e. whether a debtor can require a creditor to release its lien against the collateral after the secured claim has been paid, but prior to completion of the Chapter 13 plan.[3]
The debtors cite to a line of cases that hold that a Chapter 13 plan may provide for the release of a creditor's lien upon payment of its allowed secured claim.[4] Generally, these courts find comfort for their position in the language of 11 U.S.C. §§ 506(d) and 1322(b)(2). To that extent, they are only half right. In other words, to the extent that they rely on § 506(d) alone for their support, they are clearly wrong.[5]
A. 11 U.S.C. § 506(d)
Section 506(d) states that:
To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless 
(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or
(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.[6]
*364 The Supreme Court in Dewsnup, determined that § 506(d) does not void liens on the basis of whether they are secured or unsecured under § 506(a), but on the basis of whether the underlying claim is allowed or disallowed under § 502.[7] In doing so, the Court found that the words must be read term-by-term.[8] The Dewsnup court concentrated on the word "allowed" in § 506(d) and found that the subsection refers to any claim that is: (1) allowed under § 502 of the Code; and (2) secured by a lien.[9] Therefore, as long as the claim is secured by a lien with recourse to the underlying collateral, and allowed under § 502, lien stripping is not available under § 506(d).[10] This is consistent with the legislative history of section 506(d) indicating that liens generally pass through the bankruptcy unaffected.[11]
With this in mind, this Court disagrees with the view expressed by the court in Bank One, Chicago, NA v. Flowers when it said:
This court agrees with Creditor in that § 506(d) applies to Chapter 13 reorganizations and Chapter 7 liquidations with "equal force." However, the court holds, in accordance with the majority of federal courts cited above, that § 506(d) has a different effect in Chapter 13 reorganizations than that mandated by the Supreme Court's Dewsnup decision in Chapter 7 liquidations. That is, while § 506(d) is to be applied with "equal force" in relation to both Chapter 13 and Chapter 7 proceedings, it has a different effect in the two proceedings.[12]
For this proposition the court relied in part on a footnote in the Supreme Court's decision in Dewsnup which said that "we express no opinion as to whether the words `allowed secured claim' have a different meaning in other provisions of the Bankruptcy Code."[13] However, the text surrounding the footnote clearly sets out what the Supreme Court held in its opinion and what the Supreme Court meant by this statement, i.e., a lien fully allowed under § 502 cannot be stripped down by § 506(d) and the words "allowed secured claim" may take on different meanings in Code sections other than 506(d):
Therefore, we hold that § 506(d) does not allow petitioner to "strip down" respondents' lien, because respondents' claim is secured by a lien and has been fully allowed pursuant to § 502. Were we writing on a clean slate, we might be inclined to agree with petitioner that the words "allowed secured claim" must take the same meaning in § 506(d) as in § 506(a). But, given the ambiguity in the text, we are not convinced that Congress intended to depart from the pre-Code rule that liens pass through bankruptcy unaffected.[14]
This is not to say that lien stripping is not available in the context of a Chapter 13 case. As many of the cases cited by the debtors are quick to point out, "§ 1322(b)(2) clearly states that a chapter 13 plan `may modify the rights of holders of secured claims.'"[15]
B. 11 U.S.C. § 1322(b)(2)
Chapter 13 is designed to allow individual debtors with a limited amount of debts and *365 income[16] to reorganize their debts and make payments to creditors over a period of time. As explained by the Supreme Court in Nobelman:
Under Chapter 13 of the Bankruptcy Code, individual debtors may obtain adjustment of their indebtedness through a flexible repayment plan approved by a bankruptcy court. Section 1322 sets forth the elements of a confirmable Chapter 13 plan. The plan must provide, inter alia, for the submission of a portion of the debtor's future earnings and income to the control of a trustee and for supervised payments to creditors over a period not exceeding five years. See 11 U.S.C. §§ 1322(a)(1) and 1322(c). Section 1322(b)(2), the provision at issue here, allows modification of the rights of both secured and unsecured creditors, subject to special protection for creditors whose claims are secured only by a lien on the debtor's home.[17]
Section 1322(b) provides, in pertinent part:
(b) [Subject to certain other provisions of § 1322], the plan may 
(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.[18]
Based on the language of the Supreme Court in Nobelman, and the unambiguous language of the statute, courts on both sides of the issue can agree that § 1322(b)(2)'s protection of the "rights" of secured creditors, therefore, extends only to the claims secured by property that is a debtor's principal residence, and permits the modification of the "rights" of other secured creditors and of unsecured creditors.[19] However, since there is currently no clear directive from § 1322(b)(2), the question for this Court to decide is not whether a secured creditor's lien rights may be modified or extinguished in Chapter 13, but rather whether they may they be extinguished prior to a debtor's completion of his or her Chapter 13 plan and receipt of a discharge. The authorities are split on this issue.
C. Case Law On Release Of Lien
One line of cases holds that a creditor's lien can be extinguished pursuant to the debtor's plan upon payment of the creditor's secured claim. Those cases use the following two lines of reasoning: (1) the undersecured portion of the creditor's lien is void upon the payment of the allowed secured claim pursuant to 11 U.S.C. § 506(d); or (2) § 1322(b)(2) does not prevent such a modification to the creditor's lien rights, and any concern about the debtor dismissing his case after the creditor's lien is released, but prior to full payment under the plan, is outweighed by the policy of affording the debtor a fresh start.[20] Another line of cases holds that a debtor may not obtain a release of a secured creditor's lien until he successfully completes the confirmed plan and receives a discharge.[21]
This Court takes the latter view. Section 1322(b)(2) does not stand in isolation apart from the rest of Chapter 13 or the Bankruptcy *366 Code. As explained by Judge Kishel, in Scheierl:
Chapter 13 is a collective proceeding, in which debtors can  and must  propose and effect a comprehensive solution to their difficulties with creditors. A Chapter 13 plan is appropriately termed a "new contract" running between the debtor and all of his creditors. Like any contract, this one embodies bilateral covenants and considerations. Those pertinent to the debtor's status are simply summarized: in return for the completed performance of a promise to make payments pursuant to the plan, the debtor receives the permanent benefit of an adjustment of pre-petition obligations, discharge of debts, and various ancillary remedies. . . . [T]his contract really has to await the debtor's full performance before the benefit of any of his statutory remedies may become final, binding, and fully effectuated on the public record.
This principle is not explicitly articulated in the Bankruptcy Code and Rules, but its resonance is evidenced in two provisions. 11 U.S.C. § 1307(b) gives the debtor an unfettered right to obtain dismissal of his case at any time, on an ex parte basis and without a showing of cause. In the event of such a dismissal, 11 U.S.C. § 349(b) restores the full pre-petition status quo as to the debtor's property rights, and his creditors' competing claims against them. These provisions answer the question of whether a debtor's effort in Chapter 13 has any final, binding effect on creditors' rights if the debtor leaves bankruptcy before full performance under his plan. They certainly mean that a Chapter 13 case cannot bring about any permanent reordering of property and contract rights, partial or comprehensive, until the debtor meets a threshold requirement: entitlement to a discharge, by "complet[ing] . . . all payments under the plan" pursuant to 11 U.S.C. § 1328(a).[22]
Chapter 13 grants a debtor the most all-encompassing discharge available under the Code. No other Chapter allows a debtor to discharge, among other things, debts for fraud and willful and malicious torts.[23] This generous discharge is intended by Congress as an incentive for debtors to complete performance under their plans.[24] Unlike Chapter 11, where the debtor is granted a discharge upon confirmation of the plan, there is a catchin Chapter 13 a debtor must wait until all plan payments are made to get a discharge, unless a hardship discharge is granted under § 1328(b).[25] Thus, the debtor is required to complete the plan before receiving the benefit of the bargain. If a debtor's case is dismissed prior to completion of the plan payments and discharge, § 349(b) unravels the bankruptcy in an attempt by the Bankruptcy Code to leave the parties as it found them.[26] Under this provision, upon dismissal of a debtor's Chapter 13 bankruptcy case, the title to the property revests in the debtor and the secured interest in the property revests in the secured creditor.
This would not be feasible if secured creditors had to release their liens and turn over title to debtors prior to plan completion. *367 For example, if secured car creditors[27] are forced to turn over title to the debtor upon payment of the secured portion of their claim, then should the case later be dismissed by the debtor under § 1307(b), or by the court upon motion by a party in interest under 1307(c), the objective of § 349(b) (to leave the parties in their pre-bankruptcy postures) is thwarted because the secured car creditor is left with an unperfected security interest. To perfect its interest, the creditor would have to regain possession of the certificate of title.[28] In order to do that, the creditor would have to (1) rely on the debtor to return the certificate of title upon dismissal of their Chapter 13 case; (2) come before the court after the case has been dismissed (and possibly closed) and file an adversary proceeding to request that the debtor turn over the certificate so that the lien may be recorded; (3) or request some form of order from the court that could be recorded in the motor vehicle records if the debtor is not willing to return the certificate of title. Meanwhile, the "secured" creditor is not protected from a third party who may purchase the vehicle from the debtor after the lien is released, but before the lien is reinstated or re-perfected after dismissal. It is presumed that this Court would then be left in the position of deciding whether to make the third party turn over the car to the secured creditor or pay-off the secured interest and look to the debtor for payment, or to tell the secured creditor that it may not get possession of the vehicle because of the prejudice to the third party.
Any of these possibilities is more prejudicial to the parties involved than allowing the secured creditor to retain its lien until the debtor makes all of the plan payments and receives a discharge. Should the need arise for the debtor to sell property secured by a lien prior to completion of the plan, he or she debtor may file a motion requesting to sell the property under 11 U.S.C. § 363. This may be handled on a case-by-case basis, and does not present a severe hardship to the debtor.
IV. Conclusion
For the reasons stated above, this Court concludes that a secured creditor cannot be forced to release its security interest until all payments are made by the debtor under the plan and the debtor has received a discharge. This result is the least prejudicial to the parties involved, and makes the most sense in light of the Supreme Court's decisions and the overall framework of Chapter 13.
A separate order will be entered consistent with this decision.
NOTES
[1] 11 U.S.C. § 506(a) provides in relevant part:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.
[2] 11 U.S.C. § 1325(a)(5)(B)(i) & (ii).
[3] This may soon change. Section 125 of the Bankruptcy Reform Act of 1998, as proposed by the House of Representatives, would amend 11 U.S.C. § 1325(a)(5)(B)(i) to read as follows:

(i) the plan provides that the holder of such claim retain the lien securing such claim until the earlier of payment of the underlying debt determined under nonbankruptcy law or discharge under section 1328, and that if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law.
H.R. 3150, 105th Cong. § 125 (1998).
[4] See, e.g., Bank One, Chicago, NA v. Flowers, 183 B.R. 509 (N.D.Ill.1995); In re Nicewonger, 192 B.R. 886 (Bankr.N.D.Ohio 1996); In re Hernandez, 175 B.R. 962 (N.D.Ill.1994); In re Wilson, 174 B.R. 215 (Bankr.S.D.Miss.1994); In re McDonough, 166 B.R. 9 (Bankr.D.Mass.1994); In re Cooke, 169 B.R. 662 (Bankr.W.D.Mo.1994); In re Schultz, 153 B.R. 170 (Bankr.S.D.Miss.1993) In re Lee, 156 B.R. 628 (Bankr.D.Minn.1993).
[5] See Dewsnup v. Timm, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992).
[6] 11 U.S.C. § 506(d).
[7] Dewsnup v. Timm, 502 U.S. 410, 415-417, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992); See also 4 COLLIER ON BANKRUPTCY ¶ 506.06[1][a] (Lawrence P. King ed., 15th ed. rev.1998) (this interpretation makes a great deal of sense because it is consistent with the legislative history, it is consistent with the exceptions set forth in 506(d)(1) and (2), and it allowed the Court to avoid a potential Fifth Amendment problem).
[8] Id.
[9] Id.
[10] Id.
[11] See 4 COLLIER ON BANKRUPTCY ¶ 506.06[1][a] (Lawrence P. King ed., 15th ed. rev.1998) (citing H.R.REP. No. 95-595, 95th Cong., 1st Sess. 357 (1977); S.REP. No. 95-989, 95th Cong., 2d Sess. 68 (1978), U.S. Code Cong. & Admin.News 1978, p. 5787).
[12] Bank One, Chicago, NA v. Flowers, 183 B.R. 509, 514 (N.D.Ill.1995).
[13] Id. at 515 (citing Dewsnup v. Timm, 502 U.S. 410, 417 n. 3, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992)).
[14] Dewsnup v. Timm, 502 U.S. 410, 417, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) (footnote omitted).
[15] In re Nicewonger, 192 B.R. 886, 889 (Bankr. N.D.Ohio 1996).
[16] See 11 U.S.C. § 109(e).
[17] Nobelman v. American Sav. Bank, 508 U.S. 324, 327, 113 S.Ct. 2106, 2109, 124 L.Ed.2d 228 (1993).
[18] 11 U.S.C. § 1322(b)(2).
[19] See Bank One, Chicago, NA v. Flowers, 183 B.R. 509 (N.D.Ill.1995); In re Cooke, 169 B.R. 662 (Bankr.W.D.Mo.1994); In re McDonough, 166 B.R. 9 (Bankr.D.Mass.1994); In re Gibbons, 164 B.R. 717 (Bankr.D.N.H.1993); In re Holiday, 1993 WL 733165 (Bankr.S.D.Ga.1993).
[20] See, e.g., Bank One, Chicago, NA v. Flowers, 183 B.R. 509 (N.D.Ill.1995); In re Nicewonger, 192 B.R. 886 (Bankr.N.D.Ohio 1996); In re Hernandez, 175 B.R. 962 (N.D.Ill.1994); In re Wilson, 174 B.R. 215 (Bankr.S.D.Miss.1994); In re McDonough, 166 B.R. 9 (Bankr.D.Mass.1994); In re Cooke, 169 B.R. 662 (Bankr.W.D.Mo.1994); In re Schultz, 153 B.R. 170 (Bankr.S.D.Miss. 1993); In re Lee, 156 B.R. 628 (Bankr.D.Minn. 1993).
[21] See, e.g., In re Zakowski, 213 B.R. 1003 (Bankr.Wis.1997); In re Pruitt, 203 B.R. 134 (Bankr.N.D.Ind.1996); In re Scheierl, 176 B.R. 498 (Bankr.D.Minn.1995); In re Jordan, 164 B.R. 89 (Bankr.E.D.Mo.1994); In re Jones, 152 B.R. 155 (Bankr.E.D.Mich.1993); In re Gibbons, 164 B.R. 207 (Bankr.D.N.H.1993).
[22] In re Scheierl, 176 B.R. 498, 504-505 (Bankr. D.Minn.1995).
[23] See 11 U.S.C. §§ 1328(a) and 523(a).
[24] See Ravenot v. Rimgale (In re Rimgale), 669 F.2d 426 (7th Cir.1982); In re Terry, 630 F.2d 634, 635 (8th Cir.1980);
[25] See 11 U.S.C. §§ 1141(d), 1328(a) and 1328(b).
[26] 11 U.S.C. § 349(b) provides:

(b) Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title 
(1) reinstates 
(A) any proceeding or custodianship superseded under section 543 of this title;
(B) any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or preserved under section 510(c)(2), 522(i)(2), or 551 of this title; and
(C) any lien voided under section 506(d) of this title;
(2) vacates any order, judgment, or transfer ordered, under section 522(i)(1), 542, 550, or 553 of this title; and
(3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.
[27] Most of the objecting creditors are secured car creditors.
[28] In Texas, to perfect a security interest in a motor vehicle, the lien must be recorded on the certificate of title. See TEX.TRANSP.CODE ANN. § 501.111(a) (Vernon 1998); See also TEX.BUS. & COMM.CODE ANN. §§ 9.302(c)(2) & (d) (Vernon 1991 & Supp.1998) (filing a financing statement is not necessary to perfect a security interest in property subject to Chapter 501 of Transportation Code).